**UNITED STATES of America, Appellee,**

v.

**Bertie Alexander WRIGHT, Defendant, Appellant.**

**No. 88–1687.**

United States Court of Appeals, First Circuit.

Heard Jan. 13, 1989.

Decided April 27, 1989.

Julia M. Garriga, for defendant, appellant.

Jorge E. Vega Pacheco, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. Lopez–Romo, U.S. Atty., and Jose R. Gaztambide, Asst. U.S. Atty., Crim. Div., Hato Rey, P.R., were on brief, for the U.S.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

In mid-February 1988, security officials of the ship Jubilee found cocaine in the locker of appellant Wright, a member of the ship's crew. The government indicted Wright, charging him in Count I with unlawfully importing cocaine, 21 U.S.C. § 952(a) (1982), and in Count II with unlawfully possessing cocaine on a vessel arriving in the United States, 21 U.S.C. § 955. The government entered into a plea bargain with Wright; it agreed to move to dismiss Count I in return for Wright's plea of guilty to Count II.

Subsequently, the probation officer prepared a presentence report, and the court held a sentencing hearing. The court dismissed Count I, it accepted his plea of

guilty to Count II, and it sentenced Wright to a prison term of 45 months. Since the crime took place after November 1, 1987, the court sentenced the appellant in accordance with the new Sentencing Guidelines. *See* 28 U.S.C. § 994(a) (promulgation of Guidelines); Pub.L. No. 98–473 § 235, *reprinted at* 18 U.S.C. § 3551 note (Supp. 1988) (effective date of Guidelines).

To be more specific, in this fairly simple, straightforward case, the court essentially did the following:

(1) The court looked up the statute of conviction, 21 U.S.C. § 955, in the Guidelines index, which referred the court to Guideline § 2D1.1.

(2) Guideline § 2D1.1 sets forth different offense levels depending upon the amount of drug the defendant possessed. The court determined that Wright possessed a little over 400 grams of cocaine, and consequently it chose offense level "24," the level the Guideline sets for possession of 400–499 grams of·cocaine.

(3) The court found that the only applicable "adjustment" was a two-level reduction for "acceptance of responsibility," *see* Guideline § 3E1.1; it therefore reduced the offense level from "24" to "22."

(4) Appellant had no significant prior criminal convictions. Since he therefore received "0" criminal history points, *see* Guideline § 4A1.1, the court found that Column I of the sentencing table, Guideline § 5A, applied.

(5) The court found the relevant row and column in the sentencing table, Guideline § 5A (level 22; column I).

(6) The court rejected defendant's requests to "depart" from the Guidelines, *see* Guidelines, Introduction § 4(b); § 5K.

(7) The court selected a prison term of 45 months, a term within the range listed at the intersection of the appropriate row and column of the sentencing table, Guideline § 5A (41 to 51 months).

Appellant raises a series of legal objections to the manner in which the court applied the Guidelines. We shall consider each in turn.

1. Appellant makes several arguments about the conduct that the court considered when imposing sentence. He concedes that the court properly took account of his conduct, insofar as it constituted elements of the crime to which he pled guilty, namely possession of cocaine on a ship entering the United States. But, he does not think the court·could lawfully consider certain other, related conduct. In light of the fact that the Guidelines are new, we have read his arguments generously in his favor, but we still conclude that they are not correct as a matter of law.

■ a. Appellant's argument, literally read, says that the district court erred in considering conduct that was the subject of Count I. Count I, however, covered the same underlying conduct as Count II (Count I charged unlawful importation of cocaine, while Count II charged unlawful possession of cocaine on a vessel arriving in the United States). Thus, the court necessarily had to consider that conduct in imposing sentence for the crime to which appellant pled guilty.

■ b. Appellant complains that the court took··account of the fact that the ship's authorities found in his locker a small amount of marijuana, as well as the cocaine that was the subject of Count II. The short answer to this claim is that the district court specifically wrote in its statement of reasons, *see* 18 U.S.C. § 3553(c), that it "does not take into consideration for the purpose of this sentence the marijuana seized." Regardless, had the government adequately proved possession of the marijuana and shown that its possession was related to possession of the cocaine, the court could have taken it into account when imposing sentence, as "relevant conduct." *See* Guidelines Introduction 4(a); Guideline § 1B1.3; *see* pp. 441–42, *infra*.

■ c. Appellant's basic concern may be that his plea bargain, though it led to a dismissal of Count I, did not produce a lower sentence. Appellant is correct about this fact. Because the Guidelines, in respect to drug cases, base sentences for the most part upon the *amount* of drugs pos-

sessed, "charge-type" plea bargains, *see* Fed.R.Crim.P. 11(e)(1)(A), may no longer prove of much value to defendants in drug cases. Here, for example, the government's agreement to dismiss Count I did not help the appellant. His sentence, based upon the amount of cocaine the court found he *actually* possessed, would have been roughly the same, whether he had been convicted of importation and possession-on-a-vessel, or possession-on-a-vessel alone. *See* Guidelines § 3D1.2(d) (multiple counts). But that fact does not make plea bargaining futile; it simply means that the government and the defendant, should they wish to bargain in a case like this one, should bargain about sentence "recommendation," *see* Fed.R.Crim.P. 11(e)(1)(B), or "a specific sentence," *see* Fed.R.Crim.P. 11(e)(1)(C). Even though the prosecutor need not agree to any such bargain, and even though the court may reject any such bargain—as it can reject any and all plea bargains, *see* Fed.R.Crim.P. 11(e)(2)—the Guidelines' structure does not inhibit these latter types of bargains.

In any event, appellant cannot attack his sentence by pointing to the plea bargain, for that bargain did not promise him a lower sentence. Although a guilty plea based on a promise by the prosecutor is invalid if the promise is not kept, *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), if there is no "unfulfilled promise," the plea must stand, unless, for some reason, it was not "intelligent and voluntary," and appellant has made no such showing here. *See Mabry v. Johnson*, 467 U.S. 504, 508–10, 104 S.Ct. 2543, 2546–48, 81 L.Ed.2d 437 (1984).

2. Appellant complains of the fact that the sentencing court took account of the fact that, on other occasions, various people had paid him to keep cocaine on the ship for them.

■ a. Insofar as appellant complains of the court's taking account of conduct relevant to the offense in question, or past behavior relevant to determining an appropriate penalty for the crime, he complains of a practice in which all sentencing courts have engaged in the past and in which they will continue to engage in the future. Guideline § 1B1.3 requires courts to take account of "relevant conduct"—conduct that, very roughly speaking, corresponds to those actions and circumstances that courts typically took into account when sentencing prior to the Guidelines' enactment. Past practice, and authoritative case law, indicates that the Constitution does not, as a general matter, forbid such consideration. *See McMillan v. Pennsylvania*, 477 U.S. 79, 92, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986) ("Sentencing courts necessarily consider the circumstances of an offense ... and we have consistently approved sentencing schemes that mandate consideration of facts related to the crime").

■ b. Appellant complains that the court relied on his probation officer's testimony at the sentencing hearing, in which the probation officer said that appellant told him he had been paid to hold cocaine on several past occasions. Insofar as appellant challenges this testimony as hearsay, he cannot prevail in light of case law that clearly establishes the sentencing court's power to rely upon hearsay evidence that appears reliable. *United States v. Fatico*, 603 F.2d 1053, 1057 (2d Cir.1979) (allowing use of hearsay evidence in sentencing hearings, if reliable), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). Regardless, the "hearsay" at issue here was a reported statement by appellant himself; a statement that the rules of evidence would classify as a "party's own statement," and not hearsay at all. *See* Fed.R.Evid. 801(d)(2)(A).

■ c. Insofar as appellant challenges the standard of proof as to the facts the court relied on in sentencing, the challenge fails. Case law clearly establishes that the government need not prove the facts used for sentencing "beyond a reasonable doubt." The Supreme Court has held that the "preponderance standard satisfies due process." *McMillan*, 477 U.S. at 91, 106 S.Ct. at 2419 (noting that sentencing courts have "traditionally heard evidence and found facts without any prescribed burden of proof at all"); *see also Fatico*, 603 F.2d at 1057 (government need not prove facts

used in sentencing beyond a reasonable doubt). And here, that standard was easily met.

■ d. Appellant also argues that the court used a "confession" that was "illegally obtained" in sentencing. He apparently refers to a statement he made to the ship's security officer. In that statement, appellant again said that, in the past, people had paid him to hold cocaine for them, and also that he had sold small amounts of cocaine. As far as the record reveals, however, that statement was not obtained through coercion, and appellant has not explained to this court why he thinks the "confession" was unlawfully obtained. (The statement itself says that appellant made it of his "own free will" and that he was "not being detained" and that he was "free to leave at any time." This language is typed on the first page of the statement, and appellant signed the statement on that page.) Regardless, appellant nowhere attacked the lawfulness of this "confession" in the district court. (The only reference to such a challenge in the record is a document saying that he "shall seek" to suppress the confession if the government does not negotiate a plea.) Moreover, a guilty plea acts as a waiver of any challenge to the voluntariness of a confession. *See Rogers v. Maggio*, 714 F.2d 35, 38 (5th Cir.1983); *United States v. Magnuson*, 680 F.2d 56, 58 (8th Cir.1982). Under these circumstances we shall not consider his "illegal confession" argument on appeal. *See United States v. Krynicki*, 689 F.2d 289, 291 (1st Cir.1982) (absent extraordinary circumstances, "appellate courts will not consider issues not raised below").

■ 3. Appellant, conceding that the court reduced his sentence two levels (from level 24 to level 22) because he "accepted responsibility," *see* Guideline § 3E1.1, argues that he is entitled to an *additional* reduction because he cooperated with the government. The appellant provided the authorities with the names of other persons he said were involved in importing drugs. The government, however, told the court that it could not prosecute the persons appellant named. The Guidelines, in a policy statement, do suggest that the court depart, and reduce a sentence, when the "defendant has made a good faith effort to provide substantial assistance in the investigation or prosecution of another person who has committed an offense." Guideline § 5K1.1. The Guidelines preface that statement, however, with the words "Upon motion of the government." Moreover, they say that the court "may" depart; they do not say that the court *must* depart. In this case the government made no such motion; instead, it opposed a departure for cooperation. Nor does appellant give any convincing reason why this court should set aside the sentencing court's decision not to make a downward departure for his cooperation. Thus, we need not decide whether, or under what circumstances, a sentencing court's decision *not* to depart might constitute an incorrect application of the Guidelines. *See* 18 U.S.C. § 3553(b) (sentencing court shall impose sentence within Guidelines range "unless the court finds" grounds for departure); § 3742(a)(2) (defendant may appeal his sentence on that grounds that it "was imposed as a result of an incorrect application of the sentencing guidelines").

■ 4. Appellant argues that the court should have applied a downward adjustment because he was a "minimal" or "minor" participant in the criminal activity. *See* Guidelines § 3B1.2. The probation officer, testifying at the sentencing hearing, agreed (though he had made no such recommendation in the presentence report). Appellant argues that drug importing schemes usually involve several persons; that the particular importing scheme in which he was involved did involve other persons; and that, compared to them, he played a minor role in the scheme, in that he was merely paid a few hundred dollars for keeping the cocaine in his locker. He also points out that the amount of cocaine he possessed was near the lower boundary of offense level 24 (level 24 applies to 400–499 grams; level 22 applies to 300–399 grams).

The evidence before the sentencing court, however, regarding appellant's role in comparison to that of other persons, consisted only of appellant's own statements. The court concluded that

> defendant was not a minimal participant in the offense insofar as it was the defendant himself who possessed the cocaine. No other participant was required to complete the offense....
>
> The person who transports drugs is not a minimal or minor participant. The person who transports drugs is a necessary link in the introduction of drugs into the United States. The transporter is a business partner fronting for the business at the critical time of importation.

The court also found that since the "net weight" of the cocaine appellant possessed was 402 grams, level 24 was appropriate.

Whether or not a particular offender was, or was not, a "minor" or a "minimal" participant, *see* § 3B1.2, (or, for that matter, whether he played the "aggravating role" of an "organizer," "leader," "manager," or "supervisor," *see* § 3B1.1) is a question of the application of the Guidelines to the particular facts of each case. Such questions, of the proper application of a legal standard to undisputed facts, are usually called "mixed questions" of fact and law. *See Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982) (defining "mixed questions of law and fact" as "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated"). Mixed questions are often reviewed *de novo*, like pure questions of law. *See United States v. McConney*, 728 F.2d 1195, 1203 (9th Cir.1984) (*en banc*) (*de novo* review is usually justified, because "usually the application of law to fact will require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles"). Sometimes, however, the "clearly erroneous" standard of review applicable to issues of fact, *see* Fed.R.Civ.P. 52(a), applies.

*See Pullman–Standard*, 456 U.S. at 289 n. 19, 102 S.Ct. at 1790, n. 19 (there is "substantial authority in the Circuits on both sides of this question" whether mixed questions should be reviewed deferentially or *de novo* ).

As the Supreme Court has recently explained, the decision which standard of review to apply "at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." *Pierce v. Underwood*, —— U.S. ——, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490 (1988) (quoting *Miller v. Fenton*, 474 U.S. 104, 114, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985)); *see also McConney*, 728 F.2d at 1202 (proper standard of review determined with regard to "concerns of judicial administration—efficiency, accuracy, and precedential weight"). In several cases, the Supreme Court has held that clearly-erroneous review is appropriate to a particular "mixed question." *See, e.g., Pierce*, 108 S.Ct. at 2547–49 (question whether government's position in lawsuit was "not substantially justified," so that plaintiffs get attorneys' fees, should receive deferential review because trial court is more familiar with the litigation, *de novo* review would be time-consuming, and determination is highly fact-specific); *Thornburg v. Gingles*, 478 U.S. 30, 79, 106 S.Ct. 2752, 2781, 92 L.Ed.2d 25 (1986) (clearly-erroneous standard applied to district court's finding of "vote dilution," because of "the trial court's particular familiarity with the indigenous political reality").

The statute providing for appellate review of sentencing foresees that strict appellate review of Guidelines application questions may not be appropriate. The statute, as recently amended, says that courts of appeals "shall give due deference to the district court's *application* of the guidelines to the facts." Cong.Rec. Oct. 21, 1988, H11180, § 7103(a)7 (amending 18 U.S.C. § 3742(d)) (emphasis added); *see Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) ("a court is to apply the law

in effect at the time it renders its decision"). Given the Supreme Court authority just mentioned, the words "due deference" in the statute must mean that, in appropriate instances, a court of appeals may review a sentencing court's application of a guideline to the facts in the same way that it reviews a sentencing court's findings of fact, *i.e.*, under the "clearly erroneous" standard. *See* 18 U.S.C. § 3742(d).

We think that our review of the district court's decision whether a defendant is a "minor" or "minimal" participant in an offense is an instance where "clearly erroneous" review is appropriate. Applying the "role in the offense" Guidelines to the individual circumstances of each defendant is, as the commentary points out, "heavily dependent on the facts of the particular case," Guideline § 3B1.2, Commentary; it requires an inquiry that is " 'essentially factual'—one that is founded 'on the application of the fact-finding tribunal's experience with the mainsprings of human conduct.' " *McConney*, 728 F.2d at 1202 (citations omitted). And, the district court's resolution of the question raises no important, widely applicable issues of law. *See Pierce*, 108 S.Ct. at 2548 (deferential review appropriate when the issue involves "multifarious, fleeting, special, narrow facts" that are not susceptible to "useful generalization").

Indeed, more intensive appellate review might hinder the Commission's legal power and expressed intention to collect information about how the district courts apply the Guidelines and to revise them in light of what it learns. *See* 28 U.S.C. § 994(*o*) (Commission has power periodically to "review and revise" the Guidelines); Guidelines, Introduction 5. Too intrusive a standard of appellate review could impede the Commission's efforts to learn from district courts' experience. *See Pierce*, 108 S.Ct. at 2548 (deferential appellate review appropriate where a statute's proper application is a "novel question ... likely to profit from the experience that an abuse-of-discretion rule will permit to develop"). Thus, we, like the Fifth Circuit, will look only for "clear" error in reviewing the district court's application of the "role in the of-

fense" Guidelines. *See United States v. Mejia–Orosco*, 867 F.2d 216 (5th Cir.1989) (sentencing court's finding that defendant played "aggravating role" in the offense, under Guideline § 3B1.1, is essentially factual and should "enjoy the protection of the 'clearly erroneous' standard").

On examining the record in this case, we cannot say that the district court's decision not to apply Guideline § 3B1.2 to this case was clearly erroneous.

■ 5. Appellant argues that he should have received an additional two-level reduction because, in addition to "accepting responsibility" for his crime, he pled guilty. The relevant Guideline, § 3E1.1, however, permits *one* two-level reduction, not two reductions, where the sentencing court finds that the defendant has accepted responsibility. This finding may, but it need not, be based on a defendant's plea of guilty. *See* Guideline § 3E1.1, Commentary.

■ 6. Appellant argues that his sentence was improper because the probation officer failed to follow a procedural provision of the District of Puerto Rico's Local Rules. Local Rule 418 says that:

.3 —Not later than sixty (60) days from ... a plea of guilty ... the Probation Officer shall disclose the presentence investigation report to the defendant.

.5 —Not later than ten (10) days after receiving counsel's objections, if any, the Probation Officer shall conduct any further investigation and make any revisions to the presentence report that may be necessary ... Unresolved differences shall be set forth by the Probation Officer in an *addendum* with the written objections of counsel attached, together with the Officer's findings regarding the contested facts and opinion on objected-to matters.

.5A— ... the Probation Officer shall certify that the contents of the report ... have been disclosed to the defendant and to counsel for the defendant ... that the content of the *addendum* has been communicated to counsel, and that the *ad-*

*dendum* fairly states any remaining objections.

The record reveals that the probation officer communicated the contents of the presentence report to appellant within sixty days of the change of plea, and more than ten days before the hearing as required by 18 U.S.C. § 3552(d). But, the officer did *not* show an addendum to Wright's counsel until the morning of the hearing.

The addendum in question discusses a factual dispute between the parties. It says:

> The attorney for the Government advised that the defendant had previously transported cocaine for a fellow crew member aboard the M/S Jubilee three times and had been paid $200 on each occasion. Furthermore, on various occasions, Mr. Wright sold small amounts of cocaine to other crew members on the ship.
>
> The probation officer has corroborated the rebuttal presented by the attorney for the Government.

We shall assume for the sake of argument that the fact that appellant and his counsel did not see this addendum until the morning of the sentencing hearing violated Local Rule 418 (though the Rule does not specifically say when the probation officer must show counsel the addendum). Any such violation of the Local Rule is legally irrelevant, however, because the appellant, after reading the addendum, did not ask the district court for more time, nor did he ask the court to take any other corrective action. To the contrary, his counsel simply told the judge:

> Today we had the opportunity for our client to completely and fully read the presentence report, and so he certified that he has read it and he also discussed it because he had extensive and ample time to discuss it this morning.

Thus, the court believed that appellant and his counsel had read the report, and it had no reason to believe that appellant needed additional time to respond, for the addendum simply repeats information contained in appellant's own statement to the ship's security officer. *See* Fed.R.Crim.P. 32(a)(1)(A); *United States v. Schlette,* 842 F.2d 1574, 1578 (9th Cir.1988) (court must ensure that the defendant and his counsel have read the report and discussed it before sentencing). Given appellant's failure to request more time, or to explain to the district court how the late disclosure of the addendum prejudiced him, we find any error harmless, *see* Fed.R.Crim.P. 52(a), and, in any event, he waived the point. *See Krynicki,* 689 F.2d at 291.

Appellant also argues that the government's failure to review the presentence report, and respond in writing to appellant's objections, before the sentencing hearing means that the government could not comment on the report during the sentencing hearing. Nothing in Local Rule 418, or Fed.R.Crim.P. 32, however, requires the government to review the report, or to respond to the defendant's objections to it, in advance. We see no reason why the prosecutor should have been barred from addressing the court at the sentencing hearing, as Fed.R.Crim.P. 32(a)(1)(C) normally permits.

 7. Appellant says the probation officer prepared the original presentence report on the basis of incomplete information; when he learned new facts during the sentencing hearing, he changed his recommendation, suggesting that the court give an added two-level reduction in light of appellant's minor role in the offense. Appellant apparently complains of the fact that the court did not follow that recommendation. We can find, however, no basis for concluding that the district court violated any rule of law. The law gives the district court, not the probation officer, the power to impose sentence. *See* 18 U.S.C. § 3553. And, the district court had adequate legal authority to deny the adjustment, see pp. 442–44, *supra,* regardless of whether, or when, the probation officer made the recommendation.

8. We find all other arguments that appellant makes to be without legal merit.

The judgment of the district court is

*Affirmed.*

BREYER, Circuit Judge (writing separately).

Since this case concerns the new Sentencing Guidelines, *see* Sentencing Reform Act

of 1984, 18 U.S.C. § 3551 *et seq.* (1982 & Supp.1988); 28 U.S.C. §§ 991–998 (Supp. 1988), since I am a member of the Sentencing Commission, and since many future criminal appeals will involve Guidelines issues, it seems desirable to consider the question of recusal systematically and in writing. I have asked the United States Attorney and the Federal Public Defender for the District of Massachusetts to file *amicus* briefs about the appropriateness of my hearing appeals in Guidelines cases. They have done so. They believe I should hear this appeal, as do the parties in this case.

The Department of Justice rests its conclusions upon its general belief that a judge who is also a member of the Sentencing Commission "need not recuse himself in most sentencing Guidelines cases." The Public Defender similarly believes that "as a general rule it is entirely appropriate" for judges who are also members of the Commission to "hear cases ... involving the sentencing Guidelines" and they should "not ordinarily disqualify" themselves. Their reasons for reaching these conclusions include the following:

1. The Supreme Court, in *Mistretta v. United States,* — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), characterized the Sentencing Commission's guideline writing task as "an essentially neutral endeavor and one in which judicial participation is peculiarly appropriate," given the need to inform the Commission's work with "judicial experience and expertise." *Id.* 109 S.Ct. at 673. The Court specifically stated that it saw

> no reason why service on the Commission should result in widespread judicial recusals. That federal judges participate in the promulgation of Guidelines does not affect their or other judges' ability impartially to adjudicate sentencing issues.

*Id.* at 672.

2. The legislative history of the Sentencing Reform Act, 18 U.S.C. §§ 3551 *et seq.,* suggests that Congress thought judges participating in Commission work should remain active in "traditional judicial activities," and, though it notes the possibility of conflicts of interest, it appears to express no serious concern. *See* S.Rep. No. 98–225, 98th Cong. 1st Sess. 160 n. 385, 163 (1983), reprinted at 1984 U.S.Code Cong. & Admin.News 3182, 3343 n. 385, 3346.

3. The expertise gained through work on the Commission may prove helpful in deciding cases.

4. The practice of judges who have served on federal rules committees, or on rules advisory committees, has been not to recuse themselves in cases involving challenges to the federal rules. *See, e.g., Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444, 66 S.Ct. 242, 245, 90 L.Ed. 185 (1946) (the fact that the Supreme Court promulgated the Federal Rules of Civil Procedure "does not foreclose consideration of their validity, meaning or consistency"); *Home Life Ins. Co. N.Y. v. Equitable Equipment Co., Inc.,* 694 F.2d 402, 403 (5th Cir.1982) (construing local rule promulgated by the Fifth Circuit); *N.L.R.B. v. Intern. Assoc. of Heat and Frost Insulators and Asbestos Workers,* 476 F.2d 275 (3d Cir.1973) (considering challenge to local rule as inconsistent with Federal Rules of Appellate Procedure).

5. The practice of state court judges in Minnesota and Florida who have served as members of their states' sentencing commissions has been not to recuse themselves. *See, e.g., State v. Givens,* 332 N.W. 2d 187, 188–89 (Minn.1983) (considering constitutional challenge to sentencing Guidelines promulgated by a commission on which the Chief Justice of Minnesota serves); *Mathis v. State,* 515 So.2d 214 (Fla.1987) (construing sentencing Guidelines promulgated by the Florida Supreme Court).

6. As a practical matter it is desirable for judges to continue to sit on such cases; otherwise, judges might find themselves disqualified in most, if not all, criminal cases, significantly burdening other judges in the circuit. *Cf. Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 825, 106 S.Ct. 1580, 1587, 89 L.Ed.2d 823 (1986) (if a certain conflict of interest would disqualify *every* available judge, "rule of necessity" provides that no judge is disqualified); *United States v. Will,* 449 U.S. 200, 214–16, 101

S.Ct. 471, 480–81, 66 L.Ed.2d 392 (1980) (when no substitute judge is available, a federal judge can sit despite a conflict of interest).

The Department and the Public Defender believe that these considerations normally outweigh factors that might favor recusal (such as, for example, the possibility that the Commission may have already considered, and decided against, a position urged before the court in a Guidelines case).

The Department would make exceptions, however, for cases:

(1) where there is a substantial challenge, whether constitutional or not, mounted against the existence of the Guidelines system and hence of the Sentencing Commission itself; and

(2) where a judge/Commissioner has previously expressed views on the merits of the particular case that is being considered by his court.

The Department makes clear that these exceptions are narrow. The first "does not include those cases in which a challenge to the Guidelines, if successful, may require a substantial revision of the Guidelines, but will not jeopardize the continued existence of the Guidelines system." The second includes only instances where the judge has previously formed a personal opinion as to the appropriate sentence "for a particular defendant." It includes the "rare circumstance where a district court imposed sentence in a case that became the focus of Commission attention before it was decided on appeal and thereafter a judge/Commissioner was assigned to the panel deciding the appeal." It does not include instances where a judge/Commissioner has expressed general views on sentencing policy. The "statement of views on policy questions rather than on the merits of the particular case before the court is not enough to warrant recusal." *See Laird v. Tatum,* 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (mem. op. by Rehnquist, J.) (judges' public expression of views on the subject matter of litigation does not require recusal); *Camacho v. Autoridad de Telefonos de Puerto Rico,* 868 F.2d 482, 491 (1st Cir.1989) ("Our judicial system would be paralyzed if judges were disqualified from deciding cases because of views about … abstract policy issues"). As the Department points out, views expressed by a judge/Commissioner "would normally be on abstract sentencing policy, not on the merits of a particular case."

The Public Defender also believes that "an occasional case may arise in which it might be appropriate … not to sit," though it is difficult to predict in advance precisely what the "special circumstances" of such a case might be. He suggests that a judge/Commissioner make clear to the bar that he is not "unwilling to entertain motions for … recusal and to recuse himself in appropriate cases."

In light of these considerations, I shall not recuse myself in this case, where no special circumstances are present, nor shall I *automatically* recuse myself in *typical* Guidelines cases, unless they involve a serious legal challenge to the Guidelines themselves. I shall, however, entertain any motion for recusal that is made. Parties should inform the clerk of any such motion; and the clerk will transmit the motion to me without indication as to which party has made it.