**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**Carolyn L. FOX, Defendant, Appellant.**

No. 89–1498.

United States Court of Appeals,
First Circuit.

Heard Sept. 22, 1989.

Decided Nov. 17, 1989.

**358**

Dorothy F. Silver, Manchester, N.H., for appellant.

Peter E. Papps, Acting U.S. Atty., for appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and TIMBERS,* Senior Circuit Judge,

BOWNES, Circuit Judge.

This is an appeal from a sentence imposed under the Federal Sentencing Guidelines. Defendant-appellant Carolyn L. Fox raises two issues on appeal: (1) the application of the guidelines violated her right to due process; and (2) the sentence imposed contravened the provisions of a plea agreement between defendant and the government depriving her of her right to due process. We reject both contentions.

### I. THE FACTS

The facts are taken from the presentence report, none of which were objected to by defendant.[1] Defendant began work as an Assistant Consumer Credit Officer at the Bedford Bank, Bedford, New Hampshire in April, 1987. On June 6, 1988 a bank official discovered two questionable loans authorized by defendant. In reviewing these loans it was found that defendant had made a loan to a Lorraine Duclos. This loan was unusual because the loan payment book was kept by the defendant. After investigation the bank found out that defendant had made a $1500 unsecured loan to Duclos in March of 1988 that became overdue on May 18, 1988. On that day a $3250 unsecured loan was made to Duclos, the proceeds of which were used to

pay the principal and interest on the $1500 loan. The bank concluded that Duclos was a fictitious person and that the money had gone to defendant.

On June 9, 1988, bank officials confronted defendant with the information they had. She admitted that Duclos was a fictitious person and signed a statement to that effect. Defendant agreed to made restitution in the amount of $3,279.74. She told the bank officials that she had not made any other loans to herself. Defendant was discharged by the bank.

On June 13, 1988 bank auditors discovered four additional fictitious loans with outstanding balances. Proceeds from the loans were either taken in cash or in cashier's checks payable to different banks. The cashier's checks were used to make payments on personal loans and credit accounts of defendant. On June 14 two bank officials met with defendant. She admitted making five fraudulent loans to herself in the total amount of $21,650. She made full restitution on the same day as the meeting with the bank officials.

### II. INDICTMENT, PLEA AND SENTENCING

On December 14, 1988 the defendant was indicted. The indictment charged that, while an employee of the Bedford Bank, defendant made a fictitious loan in the amount of $3,250 and retained the proceeds, in violation of 18 U.S.C. § 656 (theft, embezzlement or misapplication by bank officer or employee).

On February 13, 1989 the defendant entered into a plea agreement and then pled guilty to the indictment. After questioning the defendant and her attorney in accord with Rule 11, the court was satisfied that the guilty plea was made voluntarily with a full understanding and appreciation of all of the consequences. Defendant's plea of guilty was then accepted.

Prior to the sentencing hearing, defendant filed a memorandum making two ob-

---

* Of the Second Circuit, sitting by designation.

1. Defendant did object to certain facts initially, but the report was changed to meet defendant's objections.

jections to the presentence report pertinent to this appeal. The core of defendant's first objection is stated in paragraph 12 of the memorandum: "12. It is defendant's position that the conduct considered by the Probation Officer in calculating the offense level at level ten is not 'relevant conduct,' and it should be removed as an element for consideration." The second objection was that the offense for which she was indicted did not involve more than minimal planning.

At the sentencing hearing defendant made no objection to the facts stated in the presentence report. The district court found that the sentencing recommendation of the probation department was correctly calculated and adopted it. The recommendation contained in the presentence report was based on defendant's obtaining five fraudulent loans, four in addition to the one to which she pled guilty. The offense level computation was as follows: The base offense level pursuant to section 2B1.1(a) of the Guidelines is four. The court, following the presentence report, took into account the four loans not mentioned in the indictment as "relevant conduct." Six levels were therefore added under section 2B1.1(b)(1)(G). Two more levels were added under section 2B1.1(b)(4) because the court found that more than minimal planning was involved. There was, therefore, an adjusted offense level of twelve. This was reduced by two levels for acceptance of responsibility under section 3E1.1(a), resulting in a total offense level of ten.

Defendant was placed on probation for a period of three years subject to certain conditions. One of the conditions was that defendant be confined to a community corrections center for a period of six months. The Probation Department was given discretion to reduce the three year probationary period. Defendant was also fined the minimum fifty dollars, as required. The court had been advised that defendant's financial condition precluded payment of a fine of any larger amount.

## III. THE ISSUES

A. *Whether the District Court's Application of the Sentencing Guidelines Denied Defendant Due Process.*

Defendant argues that she was denied due process in four ways: (1) she was denied the right to be sentenced on accurate and reliable information; (2) she was denied the due process right to individualized sentencing; (3) the "relevant conduct" consideration factored into the determination of the offense level was based on insufficient evidence; and (4) the conclusion by the court that "more than minimal planning" was involved was based on acts for which there was no proof.

■ We do not think that defendant's first argument, that she was denied her right to be sentenced on the basis of accurate and reliable information, is properly before us. Defendant did not challenge the accuracy of the facts set forth in the presentence report on any grounds, either in her presentencing memorandum [2] or at the sentencing hearing. Defendant attacks the presentence-report facts on the grounds of hearsay for the first time before us, and now argues that there had to be corroborating independent evidence before the facts stated in the presentence report could be considered by the district court. This is a perfect example of the reason for our rule, "that an issue not presented in the district court will not be addressed for the first time on appeal." *United States v. Curzi,* 867 F.2d 36, 44 (1st Cir.1989); *see also United States v. Figueroa,* 818 F.2d 1020, 1025 (1st Cir.1987); *United States v. Argentine,* 814 F.2d 783, 791 (1st Cir.1987). In light of defendant's failure to object to the factual presentation in the presentence report, the district court had a right to believe that defendant agreed that the facts therein were true and accurate. If the objection now raised had been formulated below there would have been an opportunity for the court to consider it and rule accordingly.

■ Moreover, it flies in the face of reality for defendant to claim that her two

---

**2.** As noted *supra* n. 1, her initial objection to    certain facts was resolved.

confessions were not accurate and reliable. We also disagree that the facts were hearsay. Defendant told the bank officials that she obtained five fraudulent loans. We think this was akin to an admission against interest. But even if it was hearsay it was admissible. What we said in *United States v. Wright*, 873 F.2d 437, 441 (1st Cir.1989) is applicable here:

> Insofar as appellant challenges this testimony as hearsay, he cannot prevail in light of case law that clearly establishes the sentencing court's power to rely upon hearsay evidence that appears reliable. *United States v. Fatico*, 603 F.2d 1053, 1057 (2d Cir.1979) (allowing use of hearsay evidence in sentencing hearings, if reliable), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). Regardless, the "hearsay" at issue here was a reported statement by appellant himself; a statement that the rules of evidence would classify as a "party's own statement," and not hearsay at all. *See* Fed.R.Evid. 801(d)(2)(A).

■ Whatever merit defendant's second contention may have had prior to the advent of the guidelines, it is now generally agreed that there is no due process right to individualized sentencing. *See United States v. Harris*, 876 F.2d 1502, 1505 (11th Cir.1989); *United States v. Seluk*, 873 F.2d 15 (1st Cir.1989); *United States v. Vizcaino*, 870 F.2d 52 (2d Cir.1989); *United States v. Frank*, 864 F.2d 992, 1008–10 (3rd Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989). Although the Court in *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) did not address the due process question directly, it did make some comments that indicate where it is tending.

> Congress, of course, has the power to fix the sentence for a federal crime, *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 5 L.Ed. 37 (1820), and the scope of judicial discretion with respect to a sentence is subject to congressional control. *Ex parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916).

*Id.* 109 S.Ct. at 650.

> Before settling on a mandatory-guideline system, Congress considered other competing proposals for sentencing reform. It rejected strict determinate sentencing because it concluded that a guideline system would be successful in reducing sentence disparities while retaining the flexibility needed to adjust for unanticipated factors arising in a particular case. The Judiciary Committee rejected a proposal that would have made the sentencing guidelines only advisory.

*Id.* at 652 (citations omitted).

■ Defendant's third argument, that the four fraudulently obtained loans not charged in the indictment should not have been factored into the sentencing determination as "relevant conduct", has some substance. There was a great deal of discussion among the members of the Sentencing Commission as to whether all relevant conduct or only the offense charged should be a sentencing factor. The relevant conduct viewpoint prevailed. Section 1B1.3(a) of the Sentencing Guidelines provides:

> **§ 1B1.3. Relevant Conduct (Factors that Determine the Guideline Range)**
>
> (a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> (1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;
>
> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or com-

mon scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts or omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts or omissions; and

(4) any other information specified in the applicable guideline.

The four fraudulent loans not charged in the indictment fall within (1) and (2) of this section.

In *United States v. Wright*, 873 F.2d at 441, we addressed the "relevant conduct" issue:

Insofar as appellant complains of the court's taking account of conduct relevant to the offense in question, or past behavior relevant to determining an appropriate penalty for the crime, he complains of a practice in which all sentencing courts have engaged in the past and in which they will continue to engage in the future. Guideline § 1B1.3 requires courts to take account of "relevant conduct"—conduct that, very roughly speaking, corresponds to those actions and circumstances that courts typically took into account when sentencing prior to the Guidelines' enactment. Past practice, and authoritative case law, indicates that the Constitution does not, as a general matter, forbid such consideration. *See McMillan v. Pennsylvania*, 477 U.S. 79, 92, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986) ("Sentencing courts necessarily consider the circumstances of an offense ... and we have consistently approved sentencing schemes that mandate consideration of facts related to the crime").

*See also United States v. Taplette*, 872 F.2d 101 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989); *United States v. Guerrero*, 863 F.2d 245, 247–50 (2nd Cir.1988).

There can be no question here that the conduct factored into the sentence was relevant and related. Defendant started obtaining money from the bank for which she worked by means of fraudulent loans in March of 1988 and continued this course of conduct until it was detected by the bank.

That she was indicted on only one fraudulent loan does not insulate the other loans from sentencing consideration. This would be contrary to sentencing practice that long predates the guidelines. *See United States v. Romano*, 825 F.2d 725, 729 (2nd Cir.1987) ("a district judge may consider hearsay statements, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in an acquittal in determining sentence"). *United States v. Bernard*, 757 F.2d 1439, 1444 (4th Cir.1985) (district court can consider counts on which defendant was acquitted); *United States v. Garcia*, 698 F.2d 31, 33 (1st Cir. 1983) (not a violation of due process to fail to inform defendant that Parole Commission would consider counts dismissed in determining eligibility for parole).

■ Defendant's final argument, attacking the finding of more than minimal planning by the district court, also fails. We start with the standard of review:

[A] court of appeals "shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). *See United States v. Wright*, 873 F.2d 437, 443–44 (1st Cir.1989); *United States v. Mejia-Orosco*, 867 F.2d 216, 217–19 (5th Cir.), *clarified on pet. for reh'g*, 868 F.2d 807, *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989).

*United States v. Paulino*, 887 F.2d 358, 359 (1st Cir.1989).

We cannot conceive of how obtaining even one fraudulent loan would not require more than minimal planning. This is not a situation where a bank employee is tempted by a large amount of cash and takes some on the spur of the moment. In order to obtain a fraudulent loan in the name of a fictitious person, defendant had to provide a chain of false information: name, address, date of birth, social security number, place of employment, signature, and a credit bureau check. Note 1(f) of the Commentary to section 1B1.1 of the guidelines defines "minimal planning" in pertinent part as follows:

"More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense.

"More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.

In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries.

The district court did not err in finding that "minimal planning" was a factor to be included in the determination of the sentence.

B. *Whether Defendant's Sentence Contravened the Plea Agreement and Violated Defendant's Right to Due Process.*

This issue is to a large extent a reworking of the "relevant conduct" argument already discussed. The heart of defendant's position is stated at page 26 of her brief.

The government's promise not to prosecute the defendant for other incidents involving other defalcations proved to be a nullity due to the inclusion of "relevant conduct" by the Court under § 1B1.3(a)(2). Defendant's sentence under the Guidelines resulted in the fact that defendant received the same sentence at the time of sentencing from the Court that she would have received had the Government prosecuted for all incidents of defalcation which occurred while defendant was at the Bank. The Court punished the defendant by its sentencing for the very acts for which that the Government promised as part of the Plea Agreement the defendant would not be held liable.

The plea agreement provided in pertinent part:

9. . . .

(a) In exchange for the defendants plea of guilty to the indictment, the Government will make no recommendation as to the sentence the judge should impose.

(b) The defendant understands that she will not be prosecuted for other incidents involving other defalcations while she was an Assistant Consumer Credit officer at the Bedford Bank, Bedford, New Hampshire.

(c) Defendant also understands that the Government will provide to the United States Probation Office all information in its possession which the Government deems relevant regarding the defendant's background, character, cooperation (if any) and involvement in this or other offenses. The Government will not conceal, nor agree or attempt to conceal, any relevant information from the Court or the Probation Officer.

10. At the sentencing, the Government will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the defendant's background, character and conduct including the conduct that is the subject of the charge contained in the indictment, and the nature and extent of the defendant's cooperation, if any.

11. Defendant expressly waives her right to appeal any sentence imposed by the Court, including her right to appellate review of a sentence under 18 U.S.C. § 3742. Defendant is aware that her sentence has not yet been determined and that the sentencing judge will ultimately determine her sentence. The defendant is also aware that any estimate of the probable sentencing range in her case under the *Sentencing Guidelines and Policy Statements* that defendant may have received from her attorney, the Government or the probation office, is a prediction, not a promise, and is not binding on the Government, the probation

office or the Court. Realizing the uncertainty in estimating what sentence she will ultimately receive from the Court, defendant knowingly waives her right to appeal her sentence in exchange for the concessions made by the Government in this agreement. Any sentencing worksheets prepared and/or submitted by the Government and/or defendant in support of a recommended sentence are not binding upon the Court and cannot be relied upon as an indication or promise of the sentence which the Court will impose. (a) The Government reserves the right to carry out its responsibilities under this Court's Policy Regulating Procedures to be followed in Guidelines Sentencing. Specifically, the Government reserves the right to 1) bring its version of the facts of this case to the attention of the probation office in connection with that office's preparation of a presentence report; 2) dispute sentencing factors or facts material to sentencing in the presentencing report; and 3) to seek resolution of such factors or facts in conference with opposing counsel and the United States Probation Office, as contemplated in this Court's Policy Regarding Procedures to be followed in Guidelines Sentencing. Moreover, the Government reserves the right to file a pleading entitled "Positions of Parties with Respect to Sentencing Factors." in accordance with § 6A1.2 of the *Sentencing Guidelines of Policy Statements* (Oct.1987) and paragraphs 5 and 6 of this Court's Policy Regarding Procedures to be followed in Guidelines Sentencing.

■ First of all, there was no breach of the plea agreement by the government. It did not prosecute the defendant for the four fraudulent loans not charged in the indictment. And, as promised, it made no recommendation at the sentencing hearing.

We do not know whether the Probation Office obtained the information about the fraudulent loans from the government or the bank officials, probably from both. But it makes no difference. The defendant was clearly put on notice that all relevant information would be given to the Proba-

tion Office and the court. At the time defendant executed the plea agreement she was represented by counsel. And based on her counsel's brief and oral argument before this court, it can be found that defendant's counsel was competent. We can therefore assume that defendant's counsel knew of the sentencing procedure under the guidelines and of the provisions of section 1B1.3(a). Nowhere in the plea agreement does the government even suggest that the sentence would be based solely on the crime charged in the indictment. We find that the government fulfilled its obligations under the plea agreement. In fact, it was the defendant who breached the agreement. See paragraph 11 of the plea agreement.

In effect, defendant's "relevant conduct" argument asks us to declare section 1B1.3 of the Sentencing Guidelines invalid. For the reasons already stated, this we refuse to do.

■ We hold that neither defendant's procedural nor substantive due process rights were violated.

AFFIRMED.