976 F.2d 727
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Davaline T. BESLOW, Defendant-Appellant.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Davaline T. BESLOW, Defendant-Appellant.
 No. 92-5350, 92-5453.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: August 6, 1992
Decided: September 29, 1992
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Robert R. Merhige, Jr., Senior District Judge. (CR-91-149-R)
 Davaline T. Beslow, Appellant Pro Se.
 S. David Schiller, Office of the United States Attorney, Richmond, Virginia, for Appellee.
 E.D.Va.
 Affirmed.
 Before WIDENER, MURNAGHAN, and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Davaline Beslow appeals from the district court's judgment and sentence (No. 92-5350), and from the district court's order denying her motion for an extension of time in which to file a belated appeal (No. 92-5453). Beslow argues in connection with her direct appeal that the district court should have allowed her to withdraw her plea of guilty to count (1) when she learned that all of the offenses listed in the fifty-five count indictment would be considered relevant conduct for purposes of sentencing, and implicitly challenges the district court's sentence. Reviewing the merits of this appeal, we affirm. We deny the government's pending motion for dismissal, for those reasons stated below.
 
 I.
 
 2
 Beslow was charged in a fifty-five count indictment with embezzling $23,663 from the Fishing Bay Federal Credit Union, where she served as a director and secretary (counts (1)-(21)), and of making false entries concerning another $36,900 on the credit union's books (counts (22)-(55)). She entered into a plea agreement whereby she agreed to plead guilty to count (1), involving an embezzlement of $1360, to waive appellate review, and to provide assistance in the government's ongoing investigation in exchange for dismissal of counts (2) through (55). The plea agreement and an accompanying statement of facts referenced the $23,663 figure of the indictment. The court reviewed the terms of the plea agreement at arraignment and informed Beslow that pleading guilty to count (1) could result in a maximum prison term of thirty years, a fine of up to one million dollars, restitution, and a special assessment.
 
 
 3
 There was considerable confusion over whether the amounts referenced in counts other than count (1) could be considered for purposes of the plea and subsequent sentencing. The court noted that the entire amount would likely appear in the presentence report, but accepted Beslow's plea of guilty to only count (1) and gave counsel permission to negotiate a modified plea agreement and statement of facts which eliminated any reference to $23,663. Although defense counsel drafted a modified plea agreement and statement of facts, they were not formally adopted. A presentence report which referenced the entire amounts listed in the indictment was later prepared. Beslow then filed a motion to withdraw her guilty plea, arguing that she did not understand that the entire amount could be considered when she chose to plead guilty.
 
 
 4
 Beslow also took issue with the calculations contained in the presentence report. That report established a thirteen-point base offense level which reflected a seven-point increase under guideline section[1] 2B1.1(b)(1)(H) for a loss greater than $40,000, a two-point increase under section 2B1.1(b)(5) for more than minimal planning, a twopoint increase under section 3B1.3 for abuse of a position of trust, and a two-point decrease under section 3E1.1 for acceptance of responsibility. The report recommended a sentencing guideline range of 12-18 months, supervised release of 3-5 years, and a fine range of $3000 to $1,000,000. Beslow argued that "loss" for purposes of increasing her offense level under section 2B1.1(b)(1)(H) should have been limited to the amount of interest lost by the credit union between the time that false credit postings were made and the time the funds were returned to the proper account, rather than encompassing the dollar amount of all funds taken. She also took issue with the two-point increases for more than minimal planning and abuse of a position of trust.
 
 
 5
 At the beginning of the subsequent sentencing hearing, the court reminded Beslow of the discussions that had occurred at arraignment, denied her motion to withdraw her plea, and sentenced her in accordance with the presentence report to twelve months imprisonment. The court also imposed two years of supervised release and a special assessment of $50, and ordered Beslow to pay the costs of supervised release. A fine was not imposed, however, due to Beslow's financial circumstances. Judgment was entered on April 24, 1992. Counts (2) through (55) were subsequently dismissed.
 
 
 6
 On May 8, 1992, defense counsel requested permission to withdraw from the case. Their request was denied. On the same day, Beslow filed her pro se notice of appeal from the April 24, 1992, judgment, along with a motion for reconsideration. She then filed a motion for stay of execution pending appeal, which was denied. A similar motion filed in this Court was also denied.
 
 
 7
 Beslow thereafter moved for an extension of time in which to file an untimely appeal from the judgment. Her motion stated that she had been informed by one defense counsel that he would be unable to handle her appeal because he was scheduled to be out of the country for the duration of the appeal period. She thereafter contacted the clerk's office for information on how to proceed pro se and was allegedly told that she could not proceed until counsel had formally withdrawn. She thus apparently believed her notice of appeal was timely filed on May 8, 1992, when counsel formally requested to withdraw. The district court denied her request for an extension, and a timely appeal of that order followed (No. 92-5453).
 
 II.
 
 8
 We turn first to the district court's denial of Beslow's motion for an extension of time in which to file an appeal, and the enforceability of the plea agreement's waiver clause, which lie at the heart of the government's motion to dismiss.
 
 
 9
 Pursuant to Fed. R. App. P. 4(b), Beslow's notice of appeal was clearly untimely when it was filed four days after the appeal period had expired. However, the district court had the ability to grant Beslow's request for an extension of up to thirty days beyond the expiration of the appeal period, upon a showing of "excusable neglect." Fed. R. App. P. 4(b); United States v. Reyes, 759 F.2d 351, 353 (4th Cir.), cert. denied, 474 U.S. 857 (1985). This Court reviews the district court's excusable neglect determination for abuse of discretion. United States v. Breit, 754 F.2d 526 (4th Cir. 1985).
 
 
 10
 The record before us leads us to the conclusion that excusable neglect was present here. Those reasons advanced by Beslow for her late filing included counsels' failure to continue representation even though the district court had not given them permission to withdraw, and the confusion created when the clerk's office told Beslow that she could not proceed pro se until counsel had formally withdrawn, which they unsuccessfully sought to do on the same day that Beslow filed her pro se notice of appeal. Counsels' conduct constituted abandonment sufficient to support a finding of excusable neglect. See United States v. Kaden, 819 F.2d 813 (7th Cir. 1987). On these facts,[2] it appears that Beslow was attempting to comply with pro se filing requirements. She should not be penalized where external forces, including abandonment by her attorneys, prohibited her from doing so, particularly where her request for an extension was made during the thirty-day extension period. See United States v. Houser, 804 F.2d 565, 569 (9th Cir. 1986) (excusable neglect found where defendant, who moved for an extension within thirty days, did all he could do to timely file after learning that attorney had not filed notice of appeal). We thus find that the district court abused its discretion in denying Beslow's request for an extension.
 
 
 11
 With regard to the clause in the initial plea agreement which purported to waive appellate review, we find that clause unenforceable. The district court conducted no inquiry concerning Beslow's understanding of the waiver provision during its otherwise thorough Rule 11 hearing, see United States v. Wessells, 936 F.2d 165, 168 (4th Cir. 1991) (express inquiry deemed necessary), and other clear evidence of Beslow's knowing and intelligent waiver of her right to appeal is lacking on this record. Cf. United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992) (waiver clause enforceable even absent express inquiry by court, where attorney testified to extent of advice given with regard to two-page plea agreement). We therefore deny the government's motion to dismiss[3] and proceed to the merits of this appeal.
 
 III.
 
 12
 Beslow argues on appeal that the district court erred in denying her motion to withdraw her guilty plea, given her lack of awareness at the time of entering her plea that the entire amount of money referenced in the indictment could be considered at sentencing. Reviewing the district court's denial for abuse of discretion, United States v. Moore, 931 F.2d 245, 248 (4th Cir.), cert. denied, 60 U.S.L.W. 3261 (U.S. 1991), we affirm.
 
 
 13
 Pursuant to Fed. R. Crim. P. 32(d), as amended in 1983, there is no absolute right to withdraw a plea prior to sentencing. Id. Rather, a defendant has the burden of showing a "fair and just rea son" for the requested withdrawal. Id.; United States v. Haley, 784 F.2d 1218, 1219 (4th Cir. 1986). Relevant factors include:
 
 
 14
 (1)Credible evidence that the plea was not knowing and voluntary;
 
 
 15
 (2)A credible assertion of innocence;
 
 
 16
 (3)The length of the delay between entry of the plea and the motion to withdraw;
 
 
 17
 (4)Whether the defendant had close assistance of competent counsel;
 
 
 18
 (5)Prejudice to the government; and
 
 
 19
 (6)Inconvenience to the court and waste of judicial resources.
 
 
 20
 Moore, 931 F.2d at 248. These factors are balancing factors only; a lack of prejudice to the government is not determinative where other factors are unfavorable to the movant. Id. Here, Beslow does not argue that she is innocent. She takes issue only with the method by which she was sentenced.
 
 
 21
 The record in this case directly undercuts Beslow's assertion that she was unaware of sentencing possibilities at the time of entering her plea of guilty to count (1). The court was not required to calculate and disclose the sentencing guideline range prior to accepting Beslow's plea. United States v. DeFusco, 949 F.2d 114, 118 (4th Cir. 1991), cert. denied, 60 U.S.L.W. 3717 (U.S. 1992). During the course of the Rule 11 hearing, she was expressly informed that she could be subject to a thirty-year prison term and a substantial fine if she chose to plead guilty to count (1), that she would be sentenced under the guidelines, and that her actual sentence within these parameters was uncertain. She was also apprised by the court's conversations with defense counsel that the total amount referenced in the indictment would likely be included in the sentence computation, even though she was only pleading guilty to count (1), and she stated then that no inducement or promises had been made other than those reflected in the plea agreement. Defense counsel may have led Beslow to believe that her sentence could be computed only on the amount referenced in count (1) prior to arraignment, but any such misinformation was corrected by the court during Rule 11 proceedings. The district court did not abuse its discretion in relying on the Rule 11 dialogue in denying Beslow's motion to withdraw her plea. See United States v. Lambey, 949 F.2d 133, 137 (4th Cir. 1991) (reargued in banc Apr. 7, 1992).
 
 IV.
 
 22
 Beslow's appeal implicitly challenges the sentence imposed pursuant to the guidelines. This argument has three components: The first is concerned with the meaning of "loss" for purposes of establishing an offense level under guideline section 2B1.1. The second is concerned with whether those offenses described in counts (2) through (55) to which Beslow did not plead guilty were appropriately considered relevant conduct for sentencing purposes. The third challenges the upward adjustments to the offense level for abusing a position of trust and for more than minimal planning. We review the district court's determination of the first two components de novo, as the issues presented are primarily legal. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). The issues concerning upward adjustments to the offense level, being primarily factual determinations, are reviewed for clear error. Id.
 
 
 23
 (A) Loss. Beslow argues that the credit union only lost the amount referenced in count (1), plus interest on the remaining amounts, because most of the funds referenced in counts (2) through (55) were eventually returned. We disagree.
 
 
 24
 The offense conduct described in this indictment falls within guideline sections 2B1.1 and 2F1.1. The commentary to section 2B1.1 provides:
 
 
 25
 (2) "Loss" means the value of the property taken, damaged, or destroyed.... Examples: (1) In the case of a theft of a check or money order, the loss is the loss that would have occurred if the check or money order had been cashed.
 
 
 26
 Id., comment. (n.2). This definition of loss is incorporated into section 2F1.1 with certain exceptions for types of fraudulent conduct not relevant to this case. U.S.S.G. § 2F1.1, comment. (n.7). Because the guidelines define "loss" in terms of the amounts taken, it was clearly appropriate for the district court to consider the offenses described in counts (2) through (55) as losses to the credit union, even if the funds reflected in those counts were later returned or deposited. See United States v. Cockerham, 919 F.2d 286, 289 (5th Cir. 1990) ("loss" equals value of property taken, even if later recovered or returned).
 
 
 27
 (B) Relevant Conduct. Beslow argues that the court should have limited its consideration at sentencing to the dollar amount described in count (1). Again, we disagree.
 
 
 28
 The embezzlement and fraud for which Beslow was indicted are offenses groupable under guideline section 3D1.2(d). Where offenses of this nature are concerned, relevant conduct-for purposes of establishing a base offense level and adjustments-consists of all "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" U.S.S.G. § 1B1.3(a)(2). The fact that a defendant has not pled guilty to all counts in an indictment does not preclude the sentencing court from considering those unconvicted offenses as relevant conduct for sentencing purposes. United States v. Williams, 880 F.2d 804, 806 (4th Cir. 1989) (quantities of cocaine referenced in dismissed counts of indictment were relevant for purposes of sentencing defendant on count to which he pled guilty); United States v. Fox, 889 F.2d 357, 363 (1st Cir. 1989) (unconvicted counts of bank fraud relevant conduct for purposes of sentencing on bank fraud count to which defendant pled guilty because they were part of same course of conduct as count of conviction). Nor does consideration of unconvicted offenses for sentencing purposes violate the terms of a nonprosecution clause in a plea agreement. Fox, 889 F.2d at 363.
 
 
 29
 The offenses described in this indictment were similar to each other in nature and occurred over a relatively short period of time. In light of the clear language of the guidelines and case precedent, the district court properly characterized the losses described in the indictment as a whole as relevant conduct for sentencing purposes, and properly combined those losses with the loss described in count (1) when arriving at an offense level of thirteen.
 
 
 30
 (C) The Remaining Increases. Finally, Beslow challenges the two-point increase in her offense level for more than minimal planning and the additional two-point increase for using a position of trust in furtherance of the crime. Pursuant to guideline section 1B1.1, comment. (n.1(f)),[4] " '[m]ore than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." Beslow was charged with fifty-five discrete acts of fraud and embezzlement which covered a period of approximately nine months. Hence, the district court did not clearly err in imposing a two-point increase under section 2B1.1(b)(5).
 
 
 31
 Similarly, we find that the district court did not err in imposing a two-point increase for abuse of a position of trust. Section 3B1.3 provides:
 
 
 32
 If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.
 
 
 33
 The commentary provides further clarification:
 
 
 34
 The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to embezzlement by an ordinary bank teller.
 
 
 35
 Id., comment. (n.1) (emphasis added). We applied this guideline in United States v. Helton, 953 F.2d 867, 869 (4th Cir. 1992), to affirm the district court's refusal to impose an enhancement for abuse of a position of trust when sentencing an imprest fund cashier who embezzled funds by misusing traveler's checks. We noted that notwithstanding her position description, the defendant's duties were similar to those of other employees and "functionally equivalent to that of 'an ordinary bank teller[,]' " id. at 869, whose wrongs are expressly excluded by the commentary to section 3B1.3. We also noted that the fact that the defendant's wrongs were difficult to detect due to lax supervision did not convert her job into a position of trust for purposes of a section 3B1.3 enhancement.
 
 
 36
 Beslow would have us believe that her position descriptions are irrelevant and that her duties, as in Helton, were no different from those of other credit union workers. In support of this position, she asserts that the Fishing Bay Federal Credit Union was a small informal organization run entirely by the efforts of volunteers, most of whom had little or no prior banking experience, and that all nine members of the credit union's Board of Directors shared day-to-day operations and office duties, including making record entries similar to the types of entries Beslow used to facilitate her crime. Beslow ignores one important fact, however: she was a founding director of the credit union and, along with other founding directors, developed the very procedures which she then abused. These procedures allowed her to carry on her activities with no supervision. In light of this fact, the district court did not clearly err in imposing a two-point enhancement for abusing a position of trust, even if we assume that Beslow's description of the credit union's operations is accurate. We therefore affirm the district court's sentence in its entirety.[5]
 
 
 37
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 United States Sentencing Commission, Guidelines Manual (Nov. 1991)
 
 
 [2]
 Because the district court made no independent findings when it denied Beslow's request for an extension in a one-word marginal order, we have only Beslow's uncontradicted account of events to rely on in making our excusable neglect determination
 
 
 [3]
 To the extent the government is also seeking dismissal of the appeal in No. 92-5366, we note that that appeal was disposed of separately
 
 
 [4]
 The commentary to this section provides definitions of terms frequently used in the guidelines
 
 
 [5]
 Defense counsel's motion to withdraw is moot, because he never entered his appearance before this Court and Beslow has been proceeding pro se throughout this appeal