UNITED STATES of America, Appellee,

v.

William GREGORIO, Defendant, Appellant.

No. 91–1393.

United States Court of Appeals, First Circuit.

Heard Dec. 2, 1991.

Decided Feb. 7, 1992.

Matthew A. Kamholtz with whom Matthew H. Feinberg and Segal & Feinberg, Boston, Mass., were on brief, for defendant, appellant.

Margaret R. Hinkle, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

William Gregorio appeals the concurrent twelve-month prison terms imposed following his conviction in the United States District Court for the District of Massachu-

setts on eleven counts of filing false statements with a federally insured bank in violation of 18 U.S.C. §§ 1014 and 2. We affirm.

# I

## BACKGROUND

Appellant, a real estate broker, pled guilty to eleven counts of filing false residential mortgage loan documents with ComFed Savings Bank ("ComFed"), a federally insured bank, during the period February 1987 to December 1988. The remaining twenty-two counts were dismissed by the government pursuant to the plea agreement. As the purchaser of two of the residences, appellant executed and submitted purchase money loan documents which concealed the information that the properties were encumbered by second mortgages, thereby enabling appellant to obtain financing without the required equity contribution. As to the nine other properties, appellant acted as the real estate broker and arranged for undisclosed second mortgage financing, prepared and executed addenda concealing the second mortgage financing, and forwarded the false documents to ComFed.

On April 8, 1991, appellant was sentenced to serve a concurrent twelve-month prison term under each of the eleven counts of conviction.[1] On appeal, Gregorio makes four assignments of sentencing error: (1) the denial of a two-level reduction in the offense level for "acceptance of responsibility," see U.S.S.G. § 3E1.1(a); (2) the two-level enhancement in the offense level for "more than minimal planning," see id. § 2F1.1(b)(2)(A); (3) the denial of a two-level reduction in the offense level for appellant's alleged role as a "minor participant," see id. § 3B1.2(b); and an alleged misapplication of the "downward departure" authorized under U.S.S.G. § 2F1.1, comment. (n. 10).

# II

## DISCUSSION

### A. Acceptance of Responsibility

The district court declined to allow appellant a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), because "[appellant did] not, though he now understands the reach of the law, appreciate the criminality of his conduct nor accepts [sic] his responsibility therefor." Appellant contends that the district court misapplied U.S.S.G. § 3E1.1(a) by focusing on "criminal conduct" with which appellant was not charged. He notes correctly that "the court cannot require the defendant to accept responsibility for some *other*, uncharged conduct." *United States v. O'Neil*, 936 F.2d 599 (1st Cir.1991) (emphasis in original). *See United States v. Perez–Franco*, 873 F.2d 455, 459 (1st Cir.1989). Appellant argues that even though he was only convicted of submitting false statements to ComFed, "the [false] notion that [he] was guilty of bank fraud clearly pervaded the [judge's] thinking and influenced his decision not to [allow] a two level reduction for acceptance of responsibility." Appellant points to a rule 11 hearing colloquy between himself and the court,[2] as well as

---

1. Except as otherwise noted, all citations are to the November 1990 version of the United States Sentencing Guidelines. *See* 18 U.S.C. § 3553(a)(4) (1988) (sentencing court "shall consider ... guidelines ... in effect on the date the defendant is sentenced.").

2. THE COURT: [S]ince that law only imposes sanctions on people who knowingly, knowing what they're doing, *defraud banks*, I start out with that.... But guilty is guilty of the crime *and the crime is knowingly defrauding the bank*. Do you understand that?
DEFENDANT: I do, your honor.
THE COURT: Ms. Hinkle?

MS. HINKLE [the prosecutor]: Your honor, might I just briefly be heard as to that since it is a matter about which there has been considerable discussion.

I would like to state that *the government does not believe that the crime is knowingly defrauding the bank.... The defendant here is only charged with making a false statement.*
THE COURT: *Your correction is right....* When *I said knowingly defrauding the bank, I clearly misspoke.* But it is my impression that a knowing misstatement is part of the government's proof, and you agree with that?
MS. HINKLE: Yes, your Honor.
THE COURT: All right. *She corrects me properly when I was going on about saying*

two statements made by the court at sentencing, as evidence that the court was laboring under the misunderstanding that appellant was charged with "bank fraud" and that the court erroneously refused a reduction for acceptance of responsibility because appellant had not accepted responsibility for "bank fraud."[3]

The record does not support appellant's characterization of the court's sentencing rationale. Not only does the transcript of the sentencing hearing itself dispel any legitimate doubt that the court was well aware that appellant was charged with making false statements to a federally insured bank, but the rule 11 plea hearing transcript does so as well. The one arguably errant reference to "bank fraud" was promptly corrected. Moreover, the two "fraud" references the court made during the sentencing hearing cannot be considered error in a case involving the making of "false statements."[4] Under no fair reading of the record could it be determined that the district court misunderstood the true nature of the charges against appellant.

B. *More than Minimal Planning*

■ Appellant next challenges the two-level enhancement for "more than minimal planning," which we review for clear error. *United States v. Strickland*, 941 F.2d 1047, 1050 (10th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 614, 116 L.Ed.2d 636 (1991). *See United States v. Preakos*, 907 F.2d 7, 9 (1st Cir.1990) ("district court's fact-based application of the guidelines [reviewed] only for clear error").

The commentary to U.S.S.G. § 1B1.1 states that " '[m]ore than minimal planning' is *deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune."* U.S.S.G. § 1B1.1, comment. n. 1(f) (emphasis added). As appellant concedes that the numerous false statements made in connection with the eleven loans ComFed approved over a twenty-two month period constituted "repeated acts," we limit our inquiry to whether the district court committed clear error in determining that appellant's false statements were not "purely opportune." Without venturing an arbitrary determination as to how many false statements are required to demonstrate "more than minimal planning," *cf. United States v. Fox*, 889 F.2d 357, 361 (1st Cir.1989) ("We cannot conceive of how obtaining even *one* fraudulent loan would not require more than minimal planning.") (dicta) (emphasis added), we conclude without hesitation that the district court did not commit clear error in finding that appellant's repeated preparation and submission of false statements did not constitute "spur of the moment" conduct. *See id.* Each of the eleven loan transactions entailed several steps: arranging for the mortgage financing; concealing the second mortgage financing in the first mortgage loan documents; and submitting the first mortgage loan documents to ComFed. We hold, therefore, that the evi-

---

*knowingly defrauding the bank,* knowingly telling the bank something so that they would part with money to their loss. *That's not what you're charged with.* But *you are charged with making a knowingly false statement to the bank; that is, saying something to the bank that's not true, knowing that it's not true,* and the thing has to be something that could make some difference to the bank's operations. Now, you understand that's what you are charged with?
DEFENDANT: *I understand that's what I'm charged with....*
(Emphasis added).

**3.** At the sentencing hearing, the court first described the statements submitted to ComFed as "fraudulent." The second reference to "fraud" took place during the court's explanation as to why a prison sentence was appropriate: "[You have] engaged in repeated acts of *fraud*. Conduct, making false statements which [you] knew to be false...."

**4.** Several courts have described 18 U.S.C. § 1014 as a "fraud" charge. *See, e.g., Rubin v. United States*, 449 U.S. 424, 427 n. 4, 101 S.Ct. 698, 700 n. 4, 66 L.Ed.2d 633 (1981) (describing criminal behavior under 18 U.S.C. § 1014 as *"fraud* in a bank loan application"); *United States v. Strahan*, 674 F.2d 96, 99 (1st Cir.), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2304, 73 L.Ed.2d 1306 (1982) (documents seized from defendant convicted under 18 U.S.C. § 1014 implicated him in *"fraudulent* conduct"); U.S.S.G. § 2F1.1 (Guidelines section titled *"Fraud* and Deceit," prescribing base offense level for violation of § 1014) (emphasis added).

dence demonstrated a degree of deliberate planning inconsistent with "purely opportune" conduct. *See* U.S.S.G. § 1B1.1, comment. n. 1(f). The two-level enhancement under U.S.S.G. § 1B1.1 did not constitute error.

### C. *Minor Role in Offense*

 Appellant contends that he should have received a two-level reduction for his role as a "minor participant" in the offenses of conviction. *See* U.S.S.G. § 3B1.2(b). Since the sentencing court's assessment of a defendant's role in the offense is "heavily dependent on the facts of the particular case," *see id.*, comment. (backg'd), it is not to be set aside on appeal unless clearly erroneous. *United States v. Rosado–Sierra*, 938 F.2d 1, 1–2 (1st Cir. 1991) (per curiam); *United States v. Ocasio*, 914 F.2d 330, 333 (1st Cir.1990); *United States v. Wright*, 873 F.2d 437, 443–440 (1st Cir.1989). The defendant must make the threshold showing, *Rosado–Sierra*, 938 F.2d at 1; *Ocasio*, 914 F.2d at 332, that he is "substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (backg'd).

Appellant describes himself as an "incautious foot soldier" in the "ComFed debacle." He argues that since he was "surely at the bottom of the hierarchy" in the extensive web of fraud which led to ComFed's demise, he must be considered a "minor" participant. Appellant's insistent focus on the wider web of fraud—the "ComFed debacle"—rather than the particular offenses for which he was sentenced, ignores controlling caselaw authority that "[r]ole-in-the-offense adjustments depend ... not only on the comparative conduct of persons jointly engaged in criminal activity, but also on comparing *each offender's actions and relative culpability with the elements of the offense.*" *Ocasio*, 914 F.2d at 333 (emphasis added); *see also United States v. Cepeda*, 907 F.2d 11, 12 (1st Cir. 1990) (§ 3B1.2 reduction—based on defendant's lesser involvement in drug activities as compared with codefendants—rejected by court because defendant's role in *offense of conviction* was not "minor"). Appellant's various roles in the eleven counts

of conviction clearly were not "minor." The required showing of lesser culpability depends *both* "on the comparative conduct of persons jointly engaged in criminal activity ... [and] on comparing each offender's actions and relative culpability with the elements of the offense." *Ocasio*, 914 F.2d at 333.

Appellant neither demonstrated that any other person was substantially more culpable, nor that appellant's criminal conduct was "minor" in the sense that it was not "important," *see id.*, to the furtherance of the criminal enterprise. Indeed, with respect to all eleven offenses, appellant appears to have been the architect of the false statements. He was the direct beneficiary of the loans obtained from ComFed on two occasions and brokered the other nine real estate loan transactions. In every instance, he arranged the loans and prepared and forwarded to ComFed the documents which concealed the existence of the second mortgage financing. Thus, appellant's criminal activity represented an important contribution to the criminal enterprise and there is nothing in the record which would support the contention that he was "substantially less culpable" than either the "average" person who participated in these eleven offenses, or the "average" person who violates 18 U.S.C. § 1014. *See id.* (measuring defendant's conduct against "the 'average' person who participates in aiding a federal prisoner to escape"). We find no clear error in the district court's rejection of appellant's request for a role-in-the-offense adjustment.

### D. *Downward Departure for "Multiple Causation"*

 Finally, appellant challenges the manner in which the district court structured its downward departure under U.S.S.G. § 2F1.1, reflecting "multiple causation" for victim loss. He argues that once the decision had been made to depart downward, the court was required to determine the extent of the departure before arriving at appellant's total offense level and the applicable guideline sentencing range ("GSR"). As appellant's claim,

viewed in its most favorable light, entails a challenge to the district court's interpretation of U.S.S.G. § 2F1.1, our review is plenary. *See United States v. Phillips*, 952 F.2d 591, 593–94 (1st Cir.1991).[5]

Appellant's total offense level was made up of the following elements: a base offense level of six, *see* U.S.S.G. § 2F1.1(a); a six-level enhancement of the offense level, reflecting "victim loss" in the $100,000 to $200,000 range, *see id.* § 2F1.1(b)(1) (rev. ed. 1988);[6] and a two-level enhancement for "more than minimal planning," *see id.* § 2F1.1(b)(2)(A). Combined with appellant's category I criminal history, the resulting total offense level of 14 yielded a 15-to-21 month GSR. Finally, relying on U.S.S.G. § 2F1.1, comment. (n. 10), the district court decided to depart downward on the ground that appellant's misrepresentations were not the sole cause of the $100,000 to $200,000 loss upon which the "victim loss" enhancement under U.S.S.G. § 2F1.1(b)(1) (rev. ed. 1988) was based. Thus, the court took "victim loss" into ac-count at two distinct stages in its guideline sentencing calculation. Its initial consideration of "victim loss" resulted in an enhancement of appellant's total offense level, the second entailed a downward departure from the GSR.

The guideline departure provision for "multiple causation" of victim loss states as follows:

> In a few instances, the total dollar loss that results from the offense may overstate its seriousness. Such situations typically occur when a misrepresentation ... is not the sole cause of the loss.... In such instances, a downward departure may be warranted.

U.S.S.G. § 2F1.1, comment. (n. 10). The district court expressly predicated its downward departure on the finding that "multiple factors impacted upon the loss to [ComFed]."[7]

Appellant argues, as he did in the district court, that all consideration of "victim loss," including the court's apportionment of appellant's share of the responsibility

---

5. It is well settled, of course, that courts of appeals lack jurisdiction to review the "extent of a downward departure merely because [the defendant] is dissatisfied with the quantification of the court's ... generosity." *United States v. Pighetti*, 898 F.2d 3, 4 (1st Cir.1990); *see also United States v. Harotunian*, 920 F.2d 1040, 1043 (1st Cir.1990) ("absen[t] ... error in calculating the GSR or applying the guidelines[,]" "[a] sentence below the GSR confers a right of appeal [only] on the government"); 18 U.S.C. § 3742(a)(3) (authorizing appellate challenge by *defendant* to *upward* departure); 18 U.S.C. § 3742(b)(3) (authorizing appellate challenge by *government* to *downward* departure). Since appellant contends that the sentence "was imposed in violation of law," however, we have appellate jurisdiction by virtue of 18 U.S.C. § 3742(a)(1).

6. The six-level enhancement for victim loss between $100,000 and $200,000 accords with the June, 1988 version of U.S.S.G. § 2F1.1(b)(1), which applies to these offenses. As of November 1, 1989, the Sentencing Commission increased the enhancement levels for losses in excess of $40,000. *See* 1991 Guidelines Manual Appendix C at 78–79 (amendment 154). Since retroactive application of the harsher punishment would violate the Ex Post Facto Clause, *see Miller v. Florida*, 482 U.S. 423, 429–35, 107 S.Ct. 2446, 2450–54, 96 L.Ed.2d 351 (1987); *Harotunian*, 920 F.2d at 1042, the district court correctly applied the June, 1988 version of § 2F1.1(b)(1).

7. Although appellant made conclusory assertions that other factors should have been considered, the district court supportably found that only the following factors had been established by a preponderance of the evidence: (1) the impact of the overall economy in the Northeast; (2) ComFed's conduct, either in tacitly permitting or openly encouraging employee practices contrary to Fannie Mae regulations; (3) the length of time ComFed retained ownership of the subject properties, thereby increasing the interest due on the loans. Appellant does not challenge these findings, but suggests several other factors which merited consideration: (1) the economic downturn; (2) the actions of ComFed employees and officers; (3) the real estate firm, developer, and closing attorneys who helped implement the scheme; (4) the agent who found the buyer; and (5) the buyer. Although we need not consider these additional factors, in light of the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," *see United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990), we note nevertheless that factors one and two are covered by the district court findings, factor three involved conduct outside the scope of these eleven loan transactions, and factors four and five involve conduct for which there is no record evidence that anyone other than appellant was responsible.

for ComFed's losses, should have been undertaken in the process of arriving at appellant's total offense level, before the GSR was determined. Under appellant's theory, the court should have factored "victim loss" into its sentencing calculus at three separate stages. First, the court should have determined the total amount of ComFed's loss in connection with all eleven loans. Second, the court should have apportioned responsibility for the total loss ratably among the causative factors attributable to appellant and the causative factors for which appellant was not responsible. Finally, appellant's offense level should then have been enhanced by reference to the loss table, *see* § 2F1.1(b)(1) (Table) (rev. ed. 1988), but only to the extent of the loss for which appellant alone was found responsible. Thus, appellant argues, "[t]here would be no need to depart from the heartland." [8]

The sole support offered for appellant's proposed structuring of a departure for "multiple causation" of victim loss under U.S.S.G. § 2F1.1, comment. (n. 10) derives from his resourceful interpretation of the Sentencing Commission's distinction between "guided" and "unguided" departures. *See* U.S.S.G. § 1A4(b), p.s. at 1.6. Under appellant's interpretation, unguided departures are authorized strictly by statute, *see* 18 U.S.C. § 3553(b), whereas the authority for guided departures derives from the express language of the Sentencing Guidelines, *see* U.S.S.G. § 1A4(b), p.s. Appellant argues that unguided departures are authorized by statute only in instances where the court finds "an aggravating or mitigating circumstance of a kind, or to a degree, *not adequately taken into consideration* by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b) (emphasis added). Thus, according to appellant, since "multiple causation" was expressly considered by the Commission in its formulation of U.S.S.G. § 2F1.1, the departure in this case can only have been one of the guided variety. Appellant further maintains that application note 10 itself provides "specific guidance," *see* U.S.S.G. § 1A4(b), p.s., by enabling a departure for "multiple causation" only within the framework of the victim loss table in U.S.S.G. § 2F1.1(b)(1). Appellant therefore insists that the district court incorrectly resorted to an unguided departure by referring to the victim loss table before it had apportioned the amount of the total ComFed loss for which he alone was responsible.

The Sentencing Commission intended that the district courts "treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. § 1A4(b), p.s.; [9] *Harotunian*, 920 F.2d at 1042-43. Thus, for purposes of the present case the district court was permitted to depart only if it supportably determined that there existed "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration" by the Sentencing Commission in formulating U.S.S.G. § 2F1.1. *See United States v. Carr*, 932 F.2d 67, 72 (1st Cir. 1991) (discussing departure pursuant to § 3553(b)); *see also* 18 U.S.C. § 3553(b); U.S.S.G. § 1A4(b), p.s. at 1.5. Whether U.S.S.G. § 2F1.1 takes adequate account of "multiple causation" for victim loss is readily determinable through reference to application note 10, which explicitly identifies "multiple causation" as an appropriate circumstance for considering a downward departure in order to compensate for the

---

**8.** Appellant's anomalous suggestion that the court need not have departed downward from the GSR is less mysterious than it sounds. The plea agreement required the government to recommend the lowest sentence within the applicable GSR. The GSR was determined at 15–21 months, and the government accordingly recommended 15 months. Were appellant to prevail on the present contention, he anticipates that the GSR would be lower, permitting him to argue that the government breached the plea agreement by recommending "the minimum

sentence within the *higher* [GSR] window." (emphasis added).

**9.** All departures ultimately depend on the authority conferred by 18 U.S.C. § 3553(b) and (e). We are concerned only with subsection 3553(b). *See also* § 3553(e) (court may depart downward at government's request based on defendant's substantial assistance to criminal investigation); U.S.S.G. § 5K1.1 (same).

fact that the victim loss table in U.S.S.G. § 2F1.1(b)(1) presumes that the defendant alone is responsible for the entire amount of victim loss specified in the particular loss range selected by the sentencing court. Thus, "multiple causation" of victim loss is a "Commission-identified" *circumstance* in which a downward departure may be warranted.[10] *See United States v. Reyes*, 927 F.2d 48, 51–52 (1st Cir.1991) (Commission's identification of a specific basis for departure "forecloses further inquiry" into whether particular circumstance was "adequately considered"); *United States v. Summers*, 893 F.2d 63, 67 (4th Cir.1990) (Wilkins, J.) (Commission-identified departure "establishes per se" that the particular circumstance may warrant departure); *see also* U.S.S.G. § 1B1.7 ("the commentary may suggest circumstances which, in the view of the Commission, may warrant departure from the guidelines").[11]

A Commission-identified departure may be "guided" or "unguided." Wilkins, *supra* note 11, at 440 ("Occasionally, the commentary accompanying a particular guideline not only describes an 'invited departure' but also suggests *how the court should structure or limit its departure decision.*") (emphasis added); Selya & Kipp, *supra* note 11, at 11–12 (a departure is "guided" if the Commission not only identifies the circumstances but indicates that the "departure should be calibrated by a particular analogy to the sentencing grid"). *See, e.g.*, U.S.S.G. § 2G1.1, comment. (n. 1) (recommending "downward departure of 8 levels" where crime of transportation for purposes of prostitution was not committed for profit); U.S.S.G. § 2Q1.3, comment. (n. 7) (departure "of up to two levels" may be warranted if nature and quantity of mishandled pollutant and

risk associated with violation of permit remove case from "heartland").

A Commission-identified departure of the unguided variety, on the other hand, simply acknowledges that not all material circumstances were "adequately considered" in the related guideline. *See, e.g.*, U.S.S.G. § 2D1.1, comment. (n. 9) (high drug purity may warrant departure) (no guidance as to extent of departure); U.S.S.G. § 2L1.1, comment. (n. 8) (large scale smuggling of aliens under dangerous or inhumane conditions may warrant departure) (same); U.S.S.G. § 2L1.2, comment. (n. 3) (departure may be warranted where defendant's previous deportations, following conviction for violent felony, removes case from "heartland") (same).

The victim loss table in U.S.S.G. § 2F1.1(b)(1)—prescribing "heartland" offense-level adjustments for victim loss— was based on empirical evidence that the "amount of loss" was among the "most important factors that determined sentence length" prior to the advent of the Sentencing Guidelines. U.S.S.G. § 2F1.1, comment. (backg'd). The victim loss table represents the product of the Commission effort to encapsulate an auxiliary "heartland" sentencing formula for reflecting in the GSR the approximate total victim loss occasioned by the *defendant's* fraud.

The Commission did not attempt to incorporate in the victim loss table the comparatively infrequent adjustments warranted where approximation of the amount of victim loss occasioned by the defendant alone is complicated by considerations of "multiple causation"; *e.g.*, where "the total dollar loss that results from the offense … overstate[s] its seriousness." U.S.S.G. § 2F1.1, comment. (n. 10).[12] Instead, the Commission specifically identified "multiple causation" as a circumstance "not adequately

---

**10.** The sufficiency of the basis for departing in response to multiple causation of victim loss is not at issue.

**11.** *See generally* Selya & Kipp, *An Examination of Emerging Departure Jurisprudence Under the Federal Sentencing Guidelines*, 67 Notre Dame L.Rev. 1, 11 (1991) (factors not "adequately considered" by Commission are identified in "the language of some provisions, in commentaries accompanying other provisions, and in select policy statements"); Wilkins, *Sentencing Re-*

*form and Appellate Review*, 46 Wash. & Lee L.Rev. 429, 440 (1989) (same).

**12.** The Commission attempted to facilitate the task of the sentencing courts: "[t]he amount of loss need not be precise…. The court need only make a reasonable estimate of the range of loss, given the available information." U.S.S.G. § 2F1.1, comment. (n. 8). The difficulties facing the sentencing court in the present case included the task of apportioning the victim loss occasioned by appellant's criminal conduct and,

taken into consideration," 18 U.S.C. § 3553(b), in devising the victim loss table in U.S.S.G. § 2F1.1(b)(1). Moreover, the Commission made no attempt to impose particular constraints on the structuring or the dimensions of downward departures for "multiple causation" in response to the amorphous circumstances identified in U.S.S.G. § 2F1.1, comment. (n. 10).

Appellant's argument, in sum, confuses Commission identification of an appropriate circumstance for departure, under the authority of 18 U.S.C. § 3553(b), with Commission control or guidance as to the appropriate structuring or dimension of the departure. Application note 10 identifies "multiple causation" as an appropriate basis for downward departure, but leaves the structure and dimension of the departure to the reasoned discretion of the sentencing court. The district court reasonably structured the unguided departure in the instant case pursuant to U.S.S.G. § 2F1.1, comment. (n. 10).[13]

*Affirmed.*

for example, "the overall economy ... in the Northeast region of the country...." *See supra* note 7 (describing "multiple factors" identified in GSR and relied on by district court).

**13.** Appellant does not challenge the extent of the downward departure. It is noteworthy, however, that the present claim is impliedly premised on the unstated and unsubstantiated as-

sumption that the downward departure would have been greater had the district court structured it in the manner urged by appellant. Otherwise, appellant would gain nothing were he to prevail. Of course, we would lack jurisdiction of any appeal exclusively contesting the discretionary refusal to grant a more substantial departure. *See supra* note 5.