UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

  

No. 95-1887

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 JOS ANTONIO NU EZ-RODRIGUEZ,

 Defendant, Appellant.

  

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. H ctor M. Laffitte, U.S. District Judge] 

  

 Before

 Torruella, Chief Judge, 

 Coffin, Senior Circuit Judge, 

 and Cyr, Circuit Judge. 

  

 Rafael F. Castro Lang for appellant. 
 Rosa Emilia Rodr guez-V lez, Executive Assistant United States 
Attorney, with whom Guillermo Gil, United States Attorney, Jos A. 
Quiles-Espinosa, Senior Litigation Counsel, and Nelson Jos P rez- 
Sosa, Assistant United States Attorney, were on brief for appellee. 

  

 August 14, 1996
  

 CYR, Circuit Judge. Appellant Jos Antonio Nu ez- CYR, Circuit Judge. 

Rodriguez ("Nu ez") challenges the life sentence imposed upon him

for "carjacking", see 18 U.S.C. 2119(3), and the consecutive 

five-year sentence imposed for using a firearm in relation to a

crime of violence, see id. 924(c)(1), 2. We vacate the 

district court judgment and remand for further proceedings. 

 I I

 BACKGROUND BACKGROUND 

 At an apartment in Santurce, Puerto Rico, on the

evening of June 7, 1994, Nu ez and four other persons laid plans

to free two prisoners from the Bayamon Regional Jail. The

conspirators agreed to search out a vehicle bearing government

license plates to facilitate the planned entry upon the jail

premises. During their meeting, Nu ez saw an associate accept

delivery of a handgun. Later the same evening, after driving

around San Juan for several hours, Nu ez and two associates

spotted Jos Jaime Pierluisi-Urrutia ("Pierluisi"), brother of

the Secretary of Justice of the Commonwealth of Puerto Rico, as

he returned home around midnight in a car with government plates.

 After parking their own car, Nu ez and an associate ap-

proached the unsuspecting Pierluisi as he began unloading the

trunk. The associate brandished a handgun and demanded the car

keys. After relinquishing the keys without protest, Pierluisi

was summarily murdered by the associate with a shot to the back

of his head as Nu ez prepared to drive away in the Pierluisi

 2

vehicle. Following the murder, Nu ez drove the Pierluisi vehicle

to the housing development where he lived. 

 The next day, after learning that the FBI had been

inquiring as to his whereabouts, Nu ez presented himself for

questioning. Although he readily admitted his involvement in the

carjacking, he steadfastly maintained that he had been abducted,

threatened with a gun, and forced to participate. During a

subsequent consensual search of the apartment where he lived, FBI

agents seized a briefcase and passport, as well as clothing and

credit cards, belonging to the victim. 

 After Nu ez was indicted, he offered to cooperate with

the government provided he received total immunity from prosecu-

tion. More than seven months after his confession, and less than

a week prior to the scheduled trial, Nu ez finally pled guilty to

the charges without the benefit of a plea agreement. Subse-

quently he filed a pro se motion to set aside his guilty pleas, 

which he withdrew following the appointment of new counsel. The

district court ultimately sentenced Nu ez to life imprisonment

plus sixty months, after refusing downward adjustments for

acceptance of responsibility and "minor participation," and

rejecting a downward departure request based on "reduced mental

capacity." 

 II II

 DISCUSSION DISCUSSION 

 3

A. "Acceptance of Responsibility" (U.S.S.G. 3E1.1)1 A. "Acceptance of Responsibility" (U.S.S.G. 3E1.1)1 

 Nu ez first contends that the district court committed

reversible error in refusing to adopt a presentence report

("PSR") recommendation that he receive a three-point reduction

for acceptance of responsibility under U.S.S.G. 3E1.1.2 

 Nu ez maintains that he met his burden of proof under

  

 1Nunez was sentenced under the November 1994 guidelines,
wherein 3E1.1 provided:

 (a) If the defendant clearly demonstrates accep-
 tance of responsibility for his offense, decrease the
 offense level by 2 levels.

 (b) If the defendant qualifies for a decrease
 under subsection (a), the offense level determined
 prior to the operation of subsection (a) is level 16 or
 greater, and the defendant has assisted authorities in
 the investigation or prosecution of his own misconduct
 by taking one or more of the following steps:

 (1) timely providing complete information to
 the government concerning his own involvement in
 the offense; or

 (2) timely notifying authorities of his in-
 tention to enter a plea of guilty, thereby permit-
 ting the government to avoid preparing for trial
 and permitting the court to allocate its resources
 efficiently,

 decrease the offense level by 1 additional level.

U.S.S.G. 3E1.1 (Nov. 1994).

 2The claimed entitlement to a three-point downward adjust- 
ment for acceptance of responsibility under U.S.S.G. 3E1.1(b)
is frivolous, since the undisputed evidence unmistakably dis-
closed that Nu ez provided neither "timely" nor "complete"
information to the government concerning his own involvement in
the offense. U.S.S.G. 3E1.1(b)(1). Nor did Nu ez provide
"timely" notice to "authorities of his intention to enter a plea
of guilty, [so as to] permit[] the government to avoid preparing
for trial . . .," id. 3E1.1(b)(2). We therefore limit our 
discussion to the 3E1.1(a) claim.

 4

U.S.S.G. 3E1.1, see United States v. Gonzalez, 12 F.3d 298, 300 

(1st Cir. 1993), since all the competent evidence in the PSR was

"consistent" with his acceptance of responsibility: he volun-

tarily surrendered soon after the crime, see U.S.S.G. 3E1.1, 

comment. (n.1(d)) (Nov. 1994), assisted investigators in recover-

ing the victim's personal possessions, see id. (n.1(e)), cooper- 

ated with the FBI and entered a "straight" plea (i.e., without

exacting a plea bargain), see United States v. Vance, 62 F.3d 

1152, 1160 (9th Cir. 1995), and expressed sincere remorse at the

change-of-plea hearing and at sentencing (e.g., crying in court,

and stating that he was "sorry" for the victim's family). Nu ez

further contends that the district court erred by relying on

other factors it deemed "inconsistent" with acceptance of respon-

sibility, including Nu ez' continuing and willful failure to

disclose the names of some of his accomplices.3 This factor,

Nu ez maintains, can be relevant only to a defendant's entitle- 

ment to a 5K1.1 downward departure for "substantial assistance

to [law enforcement] authorities." See U.S.S.G. 5K1.1.4 

 1. The District Court Sentencing Decision 1. The District Court Sentencing Decision 

 In denying Nu ez a downward adjustment under 3E1.1,

the district court apparently relied on two grounds. First,

Nu ez delayed his guilty plea for six months, until five days 

  

 3Nunez did provide the first names of two accomplices.

 4Because a two-point offense-level reduction under 3E1.-
1(b) would have lowered Nu ez' total offense level from 43, CHC I
(life imprisonment), to 41, CHC I (324-405 months), see supra 
note 2, any error could not be considered harmless. 

 5

before the scheduled trial, thereby presumably leaving the

government no alternative but to prepare for trial. See U.S.S.G. 

 3E1.1, comment. (n.1(g)) (court considers timeliness of defend-

ant's manifestation of acceptance of responsibility) (Nov. 1994).

Second, the court noted that during the six-month delay, Nu ez

had offered inconsistent versions of the relevant events.5 See 

id. comment. (n.1(a)) (court considers whether defendant "truth- 

fully admitt[ed] the offense comprising the offense of convic-

tion."). Since a guilty plea does not entitle a defendant to a

downward adjustment under 3E1.1, see id. comment (n.3) (guilty 

plea and "truthful admission" are "significant evidence" of

acceptance of responsibility but "may be outweighed by [inconsis-

tent] conduct of the defendant . . ."), normally a trial court's

decision to deny a 3E1.1 adjustment would be affirmed on these

grounds. Id. comment. (n. 5) ("The sentencing judge is in a 

unique position to evaluate a defendant's acceptance of responsi-

bility. For this reason, the determination of the sentencing

judge is entitled to great deference on review.").

 The district court made other statements during the

sentencing hearing, however, which are reasonably understood to

indicate that the court declined a 3E1.1 adjustment on an inde-

pendent ground; that is, Nu ez' purported inability or ongoing

  

 5Initially, Nunez told the FBI that he had been abducted by
an unidentified male, forced at gunpoint to drive to the victim's
residence, then forced to drive the Pierluisi vehicle from the
murder scene. Later, Nunez told the FBI that while visiting at a
friend's apartment, he had encountered a group of persons who
persuaded him to assist in the prison break scheme. 

 6

refusal to disclose the names of other collaborators. As the

precise import of the district court's statements in this regard

is critical, we recite its statements at length. 

 After describing, as incredible, Nu ez' initial story

that he had been abducted by armed strangers, see supra p. 3, the 

district court observed: 

 A defendant who accepts responsibility
 must do more than that when he's involved in
 a conspiracy and where [] human life is in-
 volved. He must come forward and identify
 and help authorities get the other people.
 He has stated time and time again that he
 doesn't know these other people.

 Now, he spent with these people some
 hours in an apartment, planning a crime. He
 drives around . . . cruising in the rear seat
 while he is telling the public and the Court
 that he was forced . . . to sit on the front
 seat with the gun pointed at him. When he
 stepped out of the car, the other . . . un-
 identified male got out of the car with a
 gun. Now, we don't know whether [Nu ez] was
 wearing [or] carrying the gun, or the other
 people [were], . . . because the track record
 of this defendant is that he cannot be be-
 lieved.

 And therefore for those reasons I'm not 
 accepting the two-points downward adjustment
 for acceptance of responsibility. I don't
 think the defendant has done that. When he
 comes forward and identifies the other peo-
 ple, if he does that, then that might be a 
 different story. But he's protecting others
 and that's why he has done all these things.

Tr. at 39-40 (emphasis added). Later, once again after discuss-

ing Nu ez' inconsistent versions of the relevant events on June

7, 1994, the district court observed: 

 [In his second version,] Nunez rode in the
 rear seat. So there was no one pointing a
 gun at him. And for four hours, if he tells

 7

 the court and the authorities that he hasn't
 he cannot recognize those two at least
 those other two individuals, I'm not going to
 buy that. . . . Nunez turned several items
 [of the victim's property] over to those who
 he had originally met at the apartment.
 Again, how could he say that he cannot iden-
 tify those people? He is protecting them.
 And I know it. I'm pointing to the defen-
 dant.

Tr. at 43-44. Nu ez responded: "I'm afraid." The court did not

respond. 

 Later, in summarizing its guidelines sentencing calcu-

lations, the district court added:

 The defendant has not identified although
 the court finds that he can the other
 individuals who participated in the crime.
 These are considered to have been elements of
 a strategy to manipulate the judicial pro-
 ceedings, among other things, towards estab-
 lishing a tailor-made plea agreement condi-
 tioned on his own terms, failing to yield to
 this sort of bargain, and this occurred at
 the beginning where the defendant said I'll
 plead guilty if I get "X" type of sentence .
 . . . A defendant qualifies for a [ 3E1.1]
 reduction when he truthfully admits the con-
 duct comprising the offense of conviction and
 does not falsely deny or frivolously contest
 relevant conduct that the Court has deter-
 mined to be true and also does not keep to
 himself the identity of other coconspirators.

Tr. at 46-47. After defense counsel objected to its consider-

ation of the "informer" criterion, the district court responded:

 [M]y point is that if anyone commits a crime 
 with one or more persons, knowing those per-
 sons, does not come forward to the authori- 
 ties, giving the names of those persons, then 
 you cannot have a full acceptance of respon- 
 sibility because that entails precisely a ca- 
 tharsis, a full remorse by disclosing the
 whole thing, being truthful and not conceal-
 ing any information how to identify . . .
 these defendants. I have to say that for

 8

 defendant's benefit that there is a section
 5K in this statute. There's a Rule 35. You
 have one year to think about it . . . and to
 cooperate with the authorities. But I'm not
 saying that if you do that I will reconsider,
 but your counsel knows better than I that 
 . . . what I mean. . . . All I'm all I'm
 saying, counsel I want to make the record
 clear is that there is what is called a
 downward departure. I ruled that there is no
 departure, either upward or downward, right?
 . . . Very well. And I am saying that there
 is what is called a downward departure, and
 that's up to the defendant to avail of that
 of himself, punto, without anything else. . .
 . I'm not saying he is getting life because
 of that. I'm saying that there is that pro-
 vision in the statute and Rule 35.

Tr. at 53-55 (emphasis added).

 Nu ez characterizes the latter explanation for refusing

a 3E1.1 adjustment as an error of law, in that the district

court relied upon an eligibility criterion relevant exclusively

to 5K1.1 departures for "substantial assistance to [law en-

forcement] authorities," see U.S.S.G. 5K1.1.6 See, e.g., 

United States v. McKinney, 15 F.3d 849, 854 (9th Cir. 1994) (  

3E1.1(a) "focuses on the defendant's sincere remorse for his own

conduct, not his assistance in incriminating others"; a "defen-

dant's degree of assistance in the prosecution of a codefendant

is relevant only to his entitlement for a departure for substan-

tial assistance under 5K1.1"); see also Vance, 62 F.3d at 1157- 

58; United States v. Leonard, 50 F.3d 1152, 1158-59 (2d Cir. 

  

 6U.S.S.G. 5K1.1 reads, in part: "Upon motion by the
government stating that the defendant has provided substantial
assistance in the investigation or prosecution of another person 
who has committed an offense, the court may depart from the
guidelines." (Emphasis added.)

 9

1995).

 10

 2. Standard of Review 2. Standard of Review 

 Sentencing Guideline interpretations are reviewed de 

novo, see United States v. Bennett, 60 F.3d 902, 904 (1st Cir. 

1995), whereas the subsidiary findings of fact, including the

ultimate determination as to whether the defendant sincerely

"accepted responsibility" for the charged offense and relevant

conduct, are reviewed only for clear error, see United States v. 

Crass, 50 F.3d 81, 83 (1st Cir. 1995).7  

 Even if we were to determine that the sentencing court

committed error, however, its sentence would not be set aside

unless it affected defendant's substantial rights. See Fed. R. 

Crim. P. 52(a); see also Williams v. United States, 503 U.S. 193, 

202-03 (1992); United States v. Curran, 926 F.2d 59, 62 (1st Cir. 

1991). A sentencing decision based in part on an invalid ground

may be affirmed if "excision of the improper ground does not

obscure or defeat the reasoning of the district court," and we

are "left, on the record as a whole, with the definite and firm

conviction that removal of the inappropriate ground would not be

likely to alter the district court's view of the sentence right-

fully to be imposed." United States v. Diaz-Bastardo, 929 F.2d 

798, 800 (1st Cir. 1991) (departure decision); see also United 

States v. Diaz, 39 F.3d 568, 571 (5th Cir. 1994) (same analysis, 

reviewing denial of 3E1.1 reduction based on improper factor).

  

 7Nu ez preserved this issue by lodging a contemporaneous
objection at sentencing. 

 11

 3. The "Informer" Criterion and Section 3E1.1 3. The "Informer" Criterion and Section 3E1.1 

 The question whether U.S.S.G. 3E1.1 permits the

"informer" criterion to be considered in determining "acceptance

of responsibility" is unsettled at best. Compare McKinney, 15 

F.3d at 854 (holding that "informer" criterion is "relevant only"

to 5K1.1 departure) with United States v. Apple, 915 F.2d 899, 

913 n.23 (4th Cir. 1990) (upholding use of "informer" criterion

under pre-November 1989 guidelines, but skirting question whether

subsequent 3E1.1 amendments foreclose it) with United States v. 

Cross, 900 F.2d 66, 70 n. 1 (6th Cir. 1990) (expressing "uncer- 

tainty") (dictum) with United States v. Tellez, 882 F.2d 141, 143 

(5th Cir. 1989) (upholding denial of adjustment for acceptance of

responsibility for defendant who "never identified the person or

persons who had hired him to smuggle the contraband into the

United States"). 

 Turning first to the specific guideline language

itself, see United States v. Perez-Franco, 873 F.2d 455, 458 (1st 

Cir. 1989), we find no explicit indication that the Sentencing

Commission intended to preclude consideration of the "informer"

criterion in appropriate circumstances. Moreover, the U.S.S.G. 

3E1.1 commentary expressly provides that its listing of relevant

considerations for a two-point adjustment under subsection (a) is

nonexhaustive. See U.S.S.G. 3E1.1, comment. (n.1(a)-(g)) 

("include, but are not limited to, the following . . . .").8
  

 8These indicia are: "(a) voluntary termination or withdrawal
from criminal conduct or associations; (b) voluntary payment of
restitution prior to adjudication of guilt; (c) voluntary and

 12

Thus, the absence of an explicit reference, in section 3E1.1

itself, to "voluntary assistance to authorities in implicating

other criminal participants" is not conclusive. 

 Although the McKinney court noted that section 3E1.1 in 

general, and the nonexhaustive listing in its commentary in

particular, focus solely on the defendant's disclosures relating 

to his own criminal conduct, that is, his "personal responsibili- 

ty," see McKinney, 15 F.3d at 854 (citing U.S.S.G. 3E1.1) 

(emphasis added), personal responsibility may be manifested in

various ways and the acceptance-of-responsibility determination

under section 3E1.1 necessarily envisions a fact-specific inquiry

in each case, see United States v. Talladino, 38 F.3d 1255, 1258 

(1st Cir. 1994). Moreover, by prescribing a nonexhaustive

listing in its commentary, the Sentencing Commission left sen-

tencing courts the latitude to consider all reliable, probative

indicia tending to demonstrate, or countervail, the genuineness

of the particular defendant's remorse. We can discern no

sound basis for a general rule barring a defendant's voluntary

cooperation in truthfully identifying criminal associates from

consideration by the sentencing court in determining the genuine-

ness of the defendant's remorse. Rather, unless otherwise fore-

  

truthful admission to authorities of involvement in the offense
and related conduct; (d) voluntary surrender to authorities
promptly after commission of the offense; (e) voluntary assis-
tance to authorities in the recovery of the fruits and instrumen-
talities of the offense; (f) voluntary resignation from the
office or position held during the commission of the offense; and
(g) the timeliness of the defendant's conduct in manifesting the
acceptance of responsibility."

 13

closed by the Sentencing Guidelines, but see infra, we think a 

defendant's refusal to provide such cooperation may be weighed,

along with all other relevant evidence, in determining "accep-

tance of responsibility" under U.S.S.G. 3E1.1. Nor do we think

this basic premise is rendered unsound by the concern that "[a]

cunning but not contrite defendant may buy his way out of trouble

by providing evidence against someone else, and an entirely

contrite defendant may out of fear, ignorance of information

useful to the prosecutors, or other reason, fail to provide

assistance." Vance, 62 F.3d at 1157. To be sure, such "inform- 

ing" will not always prove a reliable or bona fide indicium of 

the defendant's remorse. Be that as it may, however, similar

credibility determinations and inferential findings are consigned

routinely to sentencing courts, and, without more, present no

sound basis for a per se rule barring the "informer" criterion 

from consideration under section 3E1.1, as one more among the

totality of the circumstances that the sentencing court considers

in assessing a defendant's true motives for "informing" (e.g.,

sentence manipulation), or not "informing" (e.g., lack of re-

morse, inability to inform, desire to protect accomplices for

personal or illicit reasons, or genuine fear of retaliation). 

 Nu ez suggests, however, that the narrowly focused

language in U.S.S.G. 3E1.1(b) (three-point reduction for

acceptance of responsibility) requiring, inter alia, that the 

defendant "timely provid[e] complete information to the govern-

ment concerning his own involvement in the offense," see supra 

 14

note 1, necessarily forecloses consideration of the "informer"

criterion under section 3E1.1. We do not agree. Subsection (b)

requires that a defendant first meet the relevant criteria 

prescribed in subsection (a), and since the "informer" criterion

is not barred by the nonexhaustive listing included in the

Commission commentary to subsection (a), see U.S.S.G. 3E1.1, 

comment. (n.1(a)-(g)), it may be weighed in the balance under the

threshold subsection (a) inquiry. Nothing in subsection 3E1.1(b)

purports to supplant the requirements of subsection (a). In-

stead, the subsection (a) requirements are explicitly made

independent. Thus, there is no sound basis for the view that the

imposition of additional requirements in subsection (b) alters

the threshold factors appropriate for consideration under subsec-

tion (a). A defendant must satisfy either subsection (b)(1) or

(b)(2), as well as subsection (a), in order to qualify for the

extra-point adjustment permitted under 3B1.1(b). 

 Section 5K1.1 likewise focuses on the "informer"

criterion, even to the exclusion of other criteria, and imposes

additional conditions precedent to sentence mitigation such as

the requirement that a defendant's cooperation in identifying

accomplices be sufficiently comprehensive to constitute "substan-

tial assistance" as certified by a government motion recommending

a downward departure. Commentary to U.S.S.G. 5K1.1 provides

that

 [t]he sentencing reduction for assistance to
 authorities shall be considered independently 
 of any reduction for acceptance of responsi-
 bility. Substantial assistance is directed

 15

 to the investigation and prosecution of crim-
 inal activities by persons other than the
 defendant, while acceptance of responsibility
 is directed to the defendant's affirmative
 recognition of responsibility for his own
 conduct.

U.S.S.G. 5K1.1, comment. (n.2) (emphasis added). 

 At first blush this commentary may seem to support

Nu ez' contention, but it is far from conclusive. At most it

indicates simply that the sentencing court is to undertake

sequential inquiries under sections 3E1.1 and 5K1.1, since the 

two independent standards require the court to balance and weigh

different criteria. Unlike section 5K1.1, moreover, section

3E1.1 requires the sentencing court to balance many divergent 

factors, consistent and inconsistent with acceptance of responsi-

bility. Nothing in application note 2 to section 5K1.1 suggests,

however, that these sequential inquiries may not involve overlap-

ping criteria, in particular the "informer" criterion. See 

United States v. Singh, 923 F.2d 1039, 1044 (3d Cir.) ( 3E1.1 

and 5K1.1 are to be assessed "independently," but involve "relat-

ed concepts"), cert. denied, 500 U.S. 937 (1991).  

 Since reason and common sense suggest that a particular

criterion may bear relevance to the inquiries required in assess-

ing a sentencing factor under more than one guideline, and no

sentencing guideline indicates otherwise, we are unable to credit

Nu ez' contention that the "informer" criterion may not be

considered under section 3E1.1. Compare U.S.S.G. 3C1.1 (upward 

offense-level adjustment for obstruction of justice) with  

3E1.1, comment. (n.4) ("Conduct resulting in an enhancement under

 16

 3C1.1 . . . ordinarily indicates that the defendant has not

accepted responsibility for his criminal conduct. There may,

however, be extraordinary cases in which adjustments under both

 3C1.1 and 3E1.1 may apply."). For example, assistance in

identifying, apprehending, or prosecuting accomplices might

buttress a cooperating defendant's statements of remorse under

section 3E1.1, without regard to whether the government considers

the cooperation sufficiently helpful to warrant a "substantial

assistance" departure under section 5K1.1.

 Finally, section 5K1.2 provides that "[a] defendant's

refusal to assist authorities in the investigation of other

persons may not be considered as an aggravating sentencing

factor." The October 1988 version of U.S.S.G. 5K1.2 included a

single commentary: "The Commission . . . rejected the use of a

defendant's refusal to assist authorities as an aggravating

sentencing factor. Refusal to assist authorities based upon

continued involvement in criminal activities and association with

accomplices may be considered, however, in evaluating a defendan-

t's sincerity in claiming acceptance of responsibility." The

Sentencing Commission deleted this commentary in November 1989,

explaining that it intended "to delete the unnecessary commentary 

containing an unclear example." U.S.S.G. App. C, amend. 292, at 

178 (November 1995) (emphasis added). 

 The current version of section 5K1.2 does not preclude

the "informer" criterion under section 3E1.1. First, given its

location in the guidelines section dealing with "departures,"

 17

section 5K1.2 clearly forbids reliance on a defendant's failure

to identify accomplices as a basis for an upward departure. But 

it neither expressly nor impliedly forbids such reliance for

purposes of sentencing adjustments such as section 3E1.1. In all 

events, since any adjustment under section 3E1.1 can only be

downward, the "informer" criterion under section 3E1.1 can never 

constitute an aggravating sentencing factor, only a mitigating

factor. See, e.g., United States v. Gordon, 895 F.2d 932, 936-37 

(4th Cir.) ( 3E1.1 reduction bespeaks "mitigation," not aggrava-

tion), cert. denied, 498 U.S. 846 (1990).  

 Notwithstanding the November 1989 amendment, it remains

clear that the commentary to section 5K1.2 contemplated that

sentencing courts were to consider the "informer" criterion under

section 3E1.1 in appropriate circumstances. Significantly, the

1988 version purported to allow the court to deny a section 3E1.1

adjustment where the defendant did not identify accomplices

because his criminal associations were ongoing. Further, it

seems that the 1989 amendment deleted the "unclear" commentary

not because the Commission had altered its view on the propriety

of the section 3E1.1 practice described in the commentary, but

because it concluded that the current text in sections 3E1.1 and

5K1.1 was sufficiently clear to support such a sentencing prac-

tice without further elaboration. We therefore conclude that

the 1989 amendment was meant to clarify, not to effect a substan-

tive change in sentencing policy. See United States v. Campbell, 

61 F.3d 976, 985 (1st Cir. 1995) (court should presume that

 18

Commission did not intend substantive change where guideline

amendments are unaccompanied by language declaring intention to

abandon earlier sentencing practice), cert. denied, 116 S. Ct. 

1556 (1996). This conclusion is confirmed by the Commission's

failure to effect a conforming 1989 modification to the non-

exhaustive listing in section 3E1.1. See supra note 8. 

 Insofar as McKinney, Vance, and Leonard might be 

thought to suggest a per se rule, but see McKinney, 15 F.3d at 

854 ("Where the defendant's refusal to assist authorities in the

prosecution of his codefendants does not detract from his clear

contrition for his own actions, he is still entitled to the

acceptance of responsibility reduction."), we must respectfully

disagree. In appropriate circumstances a sentencing court is

permitted to consider, as relevant evidence of the defendant's

sincerity in accepting responsibility for his own crimes, at

least whether a defendant truthfully has identified accomplices

in the crimes to which the defendant has pled guilty. For

example, where a defendant does not disclose accomplices because

he has elected to continue his criminal associations, the sen-

tencing court may consider such conduct along with any other

indicia of failure to accept responsibility. On the other hand,

should the court determine that a defendant has not identified

his accomplices because he genuinely fears retaliation, but that

the defendant's conduct otherwise demonstrates genuine remorse, a

downward adjustment under section 3E1.1 might yet be found appro-

priate, as the sentencing court's balancing and weighing of the

 19

relevant criteria under section 3E1.1 is entitled to great defer-

ence on appeal. U.S.S.G. 3E1.1, comment. (n.5).

 4. The "Acceptance of Responsibility" Finding  4. The "Acceptance of Responsibility" Finding 

 The district court apparently relied on two proper

grounds for its finding that Nu ez had not demonstrated accep-

tance of responsibility: (i) the six-month delay in entering a

guilty plea, see U.S.S.G. 3E1.1, comment. (n.1(g)) (timeliness 

factor), and (ii) the inconsistent stories given by Nu ez, see 

id. (n.1(a)) (truthful-admission factor).  

 In addition, the district court discussed at consider-

able length Nu ez' failure to assist the FBI in identifying his

accomplices. See supra Section II.A.1. The court appropriately 

questioned Nu ez' motives for not disclosing the identities of

his associates. Its misgivings were prompted by Nu ez' inconsis-

tent versions of the carjacking, and were explicitly connected to

its finding that Nu ez, and by extension, his insistence that he

had accepted responsibility, were not credible. Nu ez had given

uncorroborated and inconsistent explanations for not identifying

his accomplices: first, he claimed that he had not known them

before the day of the carjacking, and never learned their names;

and, second, he was "afraid" to identify them. See Gonzalez, 12 

F.3d at 300 (defendant bears burden of proof under 3E1.1). The

district court supportably found that Nu ez' true motive was to

"protect" his accomplices, a motive which when coupled with 

his two pretextual motives for refusing to "inform" (memory lapse

and/or fear) belied a genuine acceptance of responsibility. 

 20

 Nonetheless, other observations by the district court

remain open to the plausible understanding that a defendant must

always, at least where an offense results in death, "inform" on 

his accomplices in order to qualify for a 3E1.1 adjustment,

regardless of any other circumstances in the case: 

 A defendant who accepts responsibility
 must do more than that when he's involved in 
 a conspiracy and where [] human life is in- 
 volved. He must come forward and identify 
 and help authorities get the other people. .
 . .

 A defendant qualifies for a [ 3E1.1]
 reduction when he truthfully admits the con- 
 duct comprising the offense of conviction and
 does not falsely deny or frivolously contest
 relevant conduct that the Court has deter-
 mined to be true and also does not keep to 
 himself the identity of other coconspirators. 
 . . .

 [M]y point is that if anyone commits a
 crime with one or more persons, knowing those
 persons, does not come forward to the author-
 ities, giving the names of those persons,
 then you cannot have a full acceptance of 
 responsibility because that entails precisely
 a catharsis, a full remorse by disclosing the
 whole thing, being truthful and not conceal-
 ing any information how to identify . . .
 these defendants. 

As we have indicated, however, such a per se requirement would 

prove as inconsistent with the letter and spirit of section 3E1.1

as its counterpart, see, e.g., McKinney, 15 F.3d at 854. Conse- 

quently, we are unable to conclude with confidence whether the

district court deemed Nu ez' failure to identify his criminal

associates as sufficient, by itself, to preclude an adjustment

under section 3E1.1, without regard to whether Nu ez knew the

names of his accomplices or feared retaliation. 

 21

 Assuming the district court meant that mitigating

considerations are never material under section 3E1.1, it erred.

Moreover, insofar as the court envisioned a per se bar to its 

consideration of mitigating circumstances, the present record

precludes reliable "harmless error" analysis, since we cannot say

with any confidence that the court would not have disallowed a

section 3E1.1 adjustment solely because Nu ez refused to identify

his criminal associates. 

 The government points to the district court statement

that it was "not saying [Nu ez] is getting life because of . . . 

[his failure to `inform']." Yet the literal import of the

district court's language is not necessarily equivalent to an

assurance that Nu ez' life sentence had nothing to do with his

refusal to identify his criminal associates. Thus, the quoted

statement does not cure the inherent ambiguity created by the

categorical remarks the court made earlier. Consequently, on the

record as a whole, we cannot say that we are left "with the

definite and firm conviction that removal of the inappropriate

ground would not be likely to alter the district court's view of

the sentence rightfully to be imposed." See Diaz, 39 F.3d at 

568. These ambiguities counsel a remand for resentencing for

clarification,9 and further factfinding as appropriate. United 
  

 9Another statement by the district court likewise necessi-
tates a remand. It noted, based on a review of the Rule 11
hearing transcript that Nu ez had asked to be "forgiven by the
[victim's] family," but "didn't say he was remorseful, that he
was willing to cooperate." Tr. at 39. Our review of the tran-
script discloses that Nu ez stated: "I would like to ask for-
giveness from the family of the young man, (defendant crying). I

 22

States v. Berzon, 941 F.2d 8, 20 (1st Cir. 1991).  

B. The "Minor Participant" Adjustment B. The "Minor Participant" Adjustment 

 Next we consider whether the district court erred in

declining a two-point adjustment under the "minor participant"

guideline. See U.S.S.G. 3B1.2(b).10 Nu ez claims it was an 

error of law to assess his participation exclusively through

reference to the hypothetical "average participant" in a carjack-

ing and murder, rather than with reference to his coconspirators.

See United States v. Brandon, 17 F.3d 409, 460 (1st Cir.), cert. 

denied, 115 S. Ct. 80 (1994); United States v. Gregorio, 956 F.2d 

341, 344 (1st Cir. 1992) ("Role-in-the-offense adjustments depend

. . . not only on the comparative conduct of persons jointly

engaged in criminal activity, but also on comparing each offende-

r's actions and relative culpability with the elements of the of-

fense.") (citations omitted). 

 Nu ez mischaracterizes the district court rationale.

The court stated very clearly: "A defendant is not a minor

  

know what suffering is because I have a mother, I have a father,
and I'm very sorry and I would like them to forgive me." Tr. at 
21 (emphasis added). Thus, the district court's compound state-
ment ("didn't say he was remorseful, that he was willing to
cooperate") may have been either yet another reference to the
section 3E1.1 "informer" criterion, or simply a mistaken under-
standing that Nu ez had never even stated that he was "sorry" at 
the time he pled guilty. The present record does not permit us
to make a reliable determination. 

 10"A minor participant means any participant who is less
culpable than most other participants." U.S.S.G. 3B1.2,
comment. (n.3). An adjustment is allowed "for a defendant who
plays a part in committing the offense that makes him substan-
tially less culpable than the average participant." Id. 3B1.2, 
comment. (backg'd.).

 23

participant merely because he might be less culpable than others, 

co-conspirators . . . . Rather he must be less culpable than the

average participant in similar offenses." (Emphasis added.)

This statement especially the phrase "merely because" 

negates the suggestion that the district court found actual

coconspirator comparisons immaterial to the Brandon-Gregorio 

inquiry. Instead, the court acknowledged, as it explained more

fully later, that U.S.S.G. 3B1.2(b) entails a bifocal analy-

sis.11 

 We also reject the claim that the evidence does not

support the district court ruling. Its fact-specific ruling is

reviewed for clear error only, and with "considerable respect"

for a sentencing court's superior vantage point. United States 

v. Ocasio, 914 F.2d 330, 333 (1st Cir. 1990); see also Gregorio, 

956 F.2d at 344. We find no clear error. The evidence revealed

that Nu ez voluntarily participated in planning the jail break-

out, witnessed the delivery of a revolver to be used in the

carjacking, drove around with two coconspirators for several

hours searching for an appropriate vehicle, approached the victim

with an armed associate, and, as agreed, drove the Pierluisi

vehicle from the carjacking scene, despite having heard the fatal

gunshot. Finally, the evidence indicates that Nu ez played a

more active role in the carjacking-murder than at least one other

associate, who merely waited in the car while the shooter, with
  

 11The court stated: "In this case [Nu ez] planned the
offense. He participated in the planning of the offense. He
cruised with these individuals for about two hours."

 24

Nu ez nearby, approached and killed Pierluisi.

C. The Requested "Reduced Mental Capacity" Departure C. The Requested "Reduced Mental Capacity" Departure 

 Finally, Nu ez argues that the district court erred in

refusing a downward departure under U.S.S.G. 5K2.13, Diminished 

Capacity (Policy Statement), which provides:  

 If the defendant committed a non-violent 
 offense while suffering from significantly 
 reduced mental capacity not resulting from
 voluntary use of drugs or other intoxicants,
 a lower sentence may be warranted to reflect
 the extent to which reduced mental capacity 
 contributed to the commission of the offense, 
 provided that the defendant's criminal histo-
 ry does not indicate a need for incarceration
 to protect the public.

U.S.S.G. 5K2.13, p.s. (emphasis added). Essentially, Nu ez

relied on a 1984 diagnosis of borderline mental retardation and

paranoid schizophrenia, which conditions so affected his ability

to make common-sense judgments, that he was unable to resist his

coconspirators' requests that he join in the armed carjacking, or

to foresee that a murder might ensue. Recognizing that we

normally lack jurisdiction to review a district court's discre-

tionary refusal to make a downward departure, see United States 

v. Grandmaison, 77 F.3d 555, 560 (1st Cir. 1996), Nu ez instead 

argues that the court's refusal to depart was premised on its

incorrect interpretation of the phrase "non-violent offense."

Id.12 
  

 12In essence, Nunez argues that there is an inherent con-
flict between 2A1.1 and 5K2.13. The former section increased
Nunez' base offense level from 22 to 43 because death resulted
from the carjacking. See U.S.S.G. 2A1.1, comment. (n.1); 
2B3.1(c). Section 2A1.1 also notes, however, that a downward
departure may be warranted where "the defendant did not cause the

 25

 We need not linger over this claim. Without regard to

whether the district court misapprehended the meaning of "non-

violent crime," see, e.g., United States v. Weddle, 30 F.3d 532, 

537-40 (4th Cir. 1994) (discussing circuit split concerning

proper interpretation of "non-violent offense"), it expressly

ruled after defense counsel cited to the 1984 psychiatric

reports that it believed Nu ez did not suffer from the re-

quired "significantly reduced mental capacity" at the time of the

1994 carjacking:

 This defendant had this meeting with his
 friend's nephew where they sat there in this
 apartment discussing precisely a carjacking,
 stealing of a car, to commit another crime
 [i.e., the jail break], and he was there.
 And then they start cruising around, finding
 a victim until they found him, found the
 victim. So . . . [it] [s]eems to me that
 this is totally inconsistent with the dimin-
 ished capacity to commit a crime.

Tr. at 22. The court pointed out that Nu ez had admitted to

long-term, daily use of marijuana, which would tend to support

the conclusion that any diminished capacity he might have suf-

fered on June 7, 1994 "result[ed] from voluntary use of drugs or

other intoxicants." U.S.S.G. 5K2.13, p.s. 

 We thus lack appellate jurisdiction of this claim.

"[I]f the [sentencing] judge says, in effect, . . . that `this

circumstance [viz., "significantly reduced mental capacity not

  

death intentionally or knowingly." Nunez says this is inconsis-
tent with the district court's interpretation of 5K1.1, i.e.,
that it forbids departures for anything but "non-violent" crimes.
Whatever its questionable merits, we lack jurisdiction to consid-
er this claim. See infra. 

 26

resulting from voluntary use of drugs or other intoxicants"] of

which you speak has not been shown to exist in this case,' [then]

. . . no appeal lies." United States v. Pierro, 32 F.3d 611, 

619 (1st Cir. 1994), cert. denied, 115 S. Ct. 919 (1995); see 

also United States v. Regan, 989 F.2d 44, 45 (1st Cir. 1993) 

(defendant has the burden of proof under section 5K2.13). Nu ez

does not contend that the court misapprehended the criteria for

determining whether he suffered from a "significantly reduced

mental capacity." Cf. Grandmaison, 77 F.3d at 561 (jurisdiction 

lies where district court misapprehended the relevant criteria

for ascertaining "aberrant behavior").13 Since some causative

reduction in mental capacity is the sine qua non of any downward 

departure under section 5K2.13, whether the murder-carjacking be

deemed "violent" or "non-violent," we need not indeed we

cannot decide whether the court also relied on an incorrect

interpretation of "non-violent offense."

 The sentence is vacated, and the case remanded to the The sentence is vacated, and the case remanded to the 

district court for resentencing, consistent with our opinion and district court for resentencing, consistent with our opinion and 

mandate.  mandate.  

  

 13While it is unnecessary to decide the soundness of the
district court's factual conclusion, we would note that various
psychiatric evaluations of Nu ez following his arrest concluded
that he did not suffer from any abnormal mental disease or defect
on the date of the carjacking, and that he was capable of appre-
ciating the consequences of his actions.

 27